Argued May 6, affirmed August 2, 1977

McALLISTER et ux, *Respondents,*
*v.*
CHARTER FIRST MORTGAGE, INC., *Appellant.*
(No. 74-1935-L-1, SC 24624)

567 P2d 539

B. Leonard Beal, Portland, argued the cause for appellant. With him on the briefs were Michael J. Esler, and Haessler, Stamer & Esler, Portland.

Steven L. Swartsley, Medford, argued the cause for respondents. With him on the brief was Courtright & Swartsley, Medford.

BRYSON, J.

## BRYSON, J.

Plaintiffs, husband and wife, brought this action against their closing agent and mortgage broker, Charter First Mortgage, Inc. (Charter), for damages sustained as a result of Charter's failure to secure a well pump test on property purchased by plaintiffs. Charter charged plaintiffs for the test in the closing statement.

Defendant affirmatively alleged as a defense that plaintiffs previously elected their remedy by suit and obtaining a decree of rescission against their vendors (Johnsons) of the premises involved and that plaintiffs' action was barred by res judicata.[1]

The trial court struck defendant's affirmative de-

---

[1] "For a first, further and separate answer and defense, Defendant alleges:

"I

"If Plaintiffs have purchased the real property described in their Third Amended Complaint on file herein, they have thereafter successfully rescinded said sale on the grounds of the misrepresentation by Sellers R. L. Johnson and Arthie N. Johnson, in a suit for recission [sic] in the Circuit Court of the State of Oregon for the County of Jackson, Case No. 72-1842-E; a copy of the Decree of recission [sic] entered therein is attached hereto, marked Exhibit A, and is by this reference incorporated into the within Answer.

"II

"If Plaintiffs continue to occupy the described property, their ratification of said sale and continued occupancy of said property has been purely voluntary on their part and undertaken with full knowledge of any water shortage on said premises.

"For a second, further and separate answer and defense, Defendant alleges:

"I

"Plaintiffs prevailed in a suit to rescind the purchase of the property described in their Third Amended Complaint, and a copy of the Decree entered in said suit is attached hereto, marked Exhibit A, and is by this reference incorporated into the within Answer. Said suit arose out of the same transaction alleged in the present litigation; the issues raised herein could have been raised in said suit for recission [sic]."

Exhibit A, made a part of defendant's affirmative defense, set forth the decree in plaintiffs' case against the sellers, Johnsons, and their financing institution, The Lomas & Nettleton Company, which allowed rescission and is hereinafter referred to.

fenses prior to submitting the case to the jury. Judgment was entered in favor of plaintiffs on the jury's verdict.

Defendant appeals, asserting as its sole assignment of error that "[t]he trial court erred in not granting defendant judgment upon its first and second affirmative defenses which alleged that plaintiffs' action was barred by their prior judgment and decree of rescission against the sellers. * * *"

The evidence shows that plaintiffs signed an earnest money agreement on May 18, 1971, to purchase residential property owned by R. L. and Arthie N. Johnson. On the plaintiffs-Johnson property transaction plaintiffs engaged defendant as closing agent and mortgage broker to enable plaintiffs to secure a Veterans' Administration insured purchase loan from The Lomas & Nettleton Company. Although the closing statement prepared by defendant shows that defendant charged plaintiffs $45 for a "well pump test," no such test was conducted.

Shortly after plaintiffs took possession of the premises water ceased to be available from the well, and there was no water at the faucets on the premises. Plaintiffs subsequently obtained a copy of the well driller's report made at the time the well was initially drilled. That report revealed the water flow to have been "zero gallons per minute" at that time. Plaintiff Robert McAllister testified that he would not have purchased the property if he had known that it had an inadequate domestic water supply. He also testified that he closed the purchase transaction and signed the final loan agreement in reliance upon defendant's having conducted the well pump test and found the domestic water supply satisfactory to the Veterans' Administration standards. He also testified:

"A   Well, at the time we felt Mr. and Mrs. Johnson and Charter First Mortgage was at fault, Mr. Johnson first of all lied to us to start with and then second of all Charter First Mortgage charged us for something that

was not done, if it would have been done we would have never bought the property."

The jury returned the following verdict:

"We, the Jury, being duly empaneled and sworn to try the above entitled case, nine or more of our number concurring, answer the Court's questions as follows:

"No. 1. We find that there was an implied contract between the parties which obligated defendant to obtain a well pump test.

"Answer: Yes __X__ No _____

"If your answer to this question is 'no' you do not need to answer question No. 2.

"No. 2. We find that defendant's failure to obtain a well pump test caused plaintiffs to suffer damages.

"Answer: Yes __X__ No _____

"* * * * *."

This is the second lawsuit arising out of plaintiffs' purchase of the premises situated just out of Medford, Oregon. Plaintiffs first brought a suit against their vendors, R. L. and Arthie N. Johnson, alleging misrepresentation, wherein they obtained a decree of rescission which provided in part as follows:

"* * * * *.

"ORDERED, ADJUDGED AND DECREED:

"1. That that certain agreement dated May 17, 1971, entered into between the parties McAllister and the parties Johnson whereby plaintiffs paid to defendants Johnson the sum of $18,000.00 be, and it hereby is, rescinded.

"2. That the plaintiffs Robert F. McAllister and Frances N. McAllister, have and recover from the defendants R. L. Johnson and Arthie N. Johnson, all monies paid by plaintiffs to the defendants as payment upon the purchase price of subject property and all sums paid to the defendants pursuant to the terms of an earnest money agreement dated May 17, 1971 in the amount of $18,000.00.

"3. It is further ordered the plaintiffs execute and deliver to the defendants Johnson a good and sufficient deed of conveyance conveying the subject property to

[ 283 ]

said defendants subject to the encumbrance of the defendant Lomas and Nettleton Company * * *.

"4. That the plaintiffs, McAllister, have and recover from the defendants Johnson, the further sum of $1,133.73 which sums represent additional expenditures required in the purchase of said property for loan costs; real property tax reserves; fire insurance; and real property taxes paid by plaintiffs.

"* * * * *.

"6. That execution issue upon this decree and for satisfaction of these judgments.

"* * * * *."

As the Johnsons do not have the funds necessary to give effect to the above decree of rescission (refund the purchase price and satisfy the decree), plaintiffs' first suit has not alleviated plaintiffs' loss.

In the case at bar, plaintiffs' action is based upon defendant's failure to meet its contractual obligation to conduct a well pump test which, if made, would have revealed the absence of a suitable domestic water supply. In such event, the purchase loan would not have been made and the plaintiffs would not have purchased the property. This action arises from an implied contract between plaintiffs and defendant Charter separate from and independent of plaintiffs' land purchase contract with the Johnsons.

Defendant first contends that "[t]he Doctrine of Res Judicata Bars a Second Lawsuit Where a Judgment is Obtained on the Same 'Cause of Action' in an Earlier Suit Involving the Same Defendant." The record sheds practically no light on the nature of defendant Charter's involvement in plaintiffs' first suit against the Johnsons and others. Charter did not plead its participation in the rescission suit nor did it offer evidence on the matter. Plaintiffs, in their demurrer to defendant's affirmative defenses in this case, stated:

"* * * Defendant, Charter First Mortgage, was a party to the suit in equity only because of their interest in the title of the subject matter of that suit. * * *"

[ 284 ]

The nature of defendant's interest in the property in the first suit is not disclosed and defendant was dismissed as a party defendant, as shown by the final decree made a part of the defendant's affirmative answer. The record does not reveal the manner or why defendant was dismissed as a party defendant.

Before res judicata applies, the prior lawsuit must have ended in an "adjudication of issues which have culminated in a final decree." *Huszar v. Certified Realty Co.,* 272 Or 517, 523, 524, 538 P2d 57 (1975). *See also, R. L. K. and Co. v. Tax Commission,* 249 Or 603, 608-09, 438 P2d 985 (1968). In the case at bar there is no evidence that any final judgment or prejudicial dismissal was entered in respect to the defendant.

Also, res judicata applies only to those claims which might have been litigated as incidental to or essentially connected with the prior case. *See Dean v. Exotic Veneers, Inc.,* 271 Or 188, 531 P2d 266 (1975); *Jarvy v. Mowrey,* 235 Or 579, 582, 385 P2d 336 (1963); *Western Baptist Mission v. Griggs,* 248 Or 204, 209, 433 P2d 252 (1967); *Yuen Suey v. Fleshman,* 65 Or 606, 615, 133 P 803 (1913). At the time plaintiffs' rescission suit was litigated ORS 16.220(1) only provided for the joinder of causes of action.[2] The rule prior to the 1975 amendment of ORS 16.220(1) was stated in *Mayer v. First National Bk. of Oregon,* 260 Or 119, 134-35, 489 P2d 385 (1971), wherein we found there was "no authority in our statutes for joining legal and equitable causes in a single proceeding."[3]

Further, the issues tendered in this action are not

___

[2] ORS 16.220(1) has since been amended by Oregon Laws 1975, ch 158, to provide, "The plaintiff may unite several causes of action and causes of suit in the same complaint when they all arise out of a contract, express or implied * * *." (New language underscored)

[3] *Henderson v. Morey,* 241 Or 164, 405 P2d 359 (1965), cited by defendant, is distinguishable. There the recovery for waste was held to be an indivisible part of the land sale contract upon which plaintiff's suit for rescission was based. In such cases it is within the power of the equity court to determine legal issues incident to its equitable jurisdiction.

the same ones litigated in plaintiffs' prior suit against the Johnsons on a different contract, and the rule of res judicata does not apply. *Spande v. Western Life Indemnity Co.,* 68 Or 171, 180, 136 P 1189 (1913). For all of these reasons, the trial court did not err in striking the defendant's affirmative defense of res judicata.

Defendant next contends that "plaintiffs' earlier judgment and decree of rescission additionally bars recovery of damages in this action, because it was an irrevocable election of remedies."

The doctrine that, having chosen one remedy, parties are barred from pursuing a different and inconsistent remedy for the same wrong may be traced back to English common law precedents of the nineteenth century. English common law then structured litigation through the use of distinct forms of action and it was held, as a matter of procedure, that plaintiffs could not seek both real and personal remedies for the same wrong.[4]

Numerous cases have utilized the rule in situations better served by principles of estoppel, satisfaction, res judicata, ratification, or waiver. See Comment Note— Doctrine of Election of Remedies as applicable where remedies are pursued against different persons, 116 ALR 601. The doctrine of election of remedies, as used loosely by the courts, has been criticized by numerous writers.[5]

In applying the rule of election of remedies,
"* * * [t]wo remedies in fact must coexist. Otherwise, choice would be impossible. The remedies must be in law inconsistent. Otherwise, choice of one could not conceiv-

---

[4] For discussion of the origin and development of election of remedies doctrine, see Deinard and Deinard, *Election of Remedies,* 6 Minn L Rev 341, 358 (1922).

[5] Hine, *Election of Remedies, A Criticism,* 26 Harv L Rev 707 (1913); Notes, *Election of Remedies: A Delusion?,* 38 Colum L Rev 292 (1938); Fraser, *Election of Remedies: An Anachronism,* 29 Okla L Rev 1 (1976); Davidson, *A Proposal to Abolish the Doctrine of Election of Remedies,* 13 Or L Rev 298 (1934).

ably be prejudicial. The remedies must exist for the same wrong. Otherwise, there could be no necessity for choice.
"* * * * *.

"* * * [T]he principle of substantive election, as that one cannot affirm and disaffirm the same contract, rests upon the logic that a man cannot at different times insist on the truth of each of two inconsistent provisions. * * *" Deinard and Deinard, *Election of Remedies,* 6 Minn L Rev 341, 358 (1922).

It is generally accepted that on a contract to purchase property, a dissatisfied purchaser must elect to either affirm the contract and sue for damages or rescind and ask for the return of the purchase money. *Scott v. Walton,* 32 Or 460, 464, 52 P 180 (1898); *Pickinpaugh v. Morton,* 268 Or 9, 519 P2d 91 (1974); *Watson v. Fantus,* 275 Or 605, 610, 552 P2d 251 (1976). But, as stated, in this case defendant was not plaintiffs' seller and there was no final decree affecting defendant and plaintiffs. Moreover, the action is based on a different wrong than was the earlier rescission suit.

In the present case, plaintiffs have not taken a position which is necessarily inconsistent with that taken in the suit against the Johnsons. In the rescission suit they could contend that, because the contract had been induced by the Johnsons' fraud, they were entitled to avoid the contract and be restored to the status quo. In the present case they could contend, quite consistently, that if defendant had performed its undertaking to have the well tested, they would not have relied on the Johnsons' fraud and that, as a consequence, they have been damaged by defendant's breach.

The apparent problem in this case arises not because plaintiffs are taking inherently inconsistent positions as to the existence of the contract, but because of the measure of damages employed in this case. Instead of seeking damages measured by the extent to which the rescission decree has failed to restore the status quo (because of Johnsons' insolvency or otherwise), they have sought damages based on the

difference between the value of the property with and without an adequate water supply. Defendant did not, however, object in the trial court to that measure of damages but has contended only that plaintiffs may not bring this action at all. That contention, as we have explained, is incorrect. To the extent that *Robinson v. Cable,* 109 Or 579, 217 P 624 (1924), upon which defendant relies, is inconsistent with this opinion it is overruled.

■ We hold, therefore, that the trial court did not err in striking defendant's affirmative defenses and that the judgment must be affirmed. Plaintiffs are, of course, entitled to only one full satisfaction. If necessary, defendant may take appropriate steps in other proceedings to prevent double recovery or unjust enrichment on plaintiffs' part. The record in the present case is not adequate to enable us to determine whether such steps are likely to be necessary.

Affirmed.