Argued and submitted March 28, resubmitted
In banc August 7, reversed August 11, 1980

In the Matter of Boyce, Anna, A Child.
STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

BOYCE,
*Appellant.*

(No. 13,039-B, CA 15168)

615 P2d 385

Robert L. Kirkman, Portland, argued the cause and filed the brief for appellant. With him on the brief was Warren, Kirkman & Allen, Portland.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Christian W. Van Dyke, Assistant Attorney General, Salem.

CAMPBELL, J.

Gillette, J., concurring.

Roberts, J., dissenting.

## CAMPBELL, J.

The father appeals from an order of the juvenile court making his daughter a ward of the court and committing her to the Children's Services Division for care, placement, and supervision. He argues that: the summons was defective under ORS 419.486; the allegations in the second amended petition were insufficient to bring his daughter within the jurisdiction of the juvenile court; and the evidence was insufficient as a matter of law to justify making his daughter a ward of the court. We reverse.

■ Prior to the taking of evidence at the adjudicative phase of the hearing, the father moved to quash the return of service of the summons on the basis that the summons failed to comply with ORS 419.486(2). That section requires that a summons contain "a brief statement of the facts required by paragraph (b) of subsection (2) of ORS 419.484," that is, "[t]he facts which bring the child within the jurisdiction of the court as provided in subsection (1) of ORS 419.476." ORS 419.484(2)(b). In lieu of reciting those facts on its face, the summons contained as part of the printed form the language, "See statement of facts in paragraph 2 of the attached petition." The attached petition, *see* ORS 419.484(3), contained the fact statement.

In support of his contention that the summons was defective, the father cites *State v. Jamison,* 251 Or 114, 444 P2d 15, 444 P2d 1005 (1968). That case did not address the question whether a summons may satisfy ORS 419.486 by incorporating by reference the factual allegations in the accompanying petition.

The father does not contend that the technical defect in the summons denied him notice of the issues before the court or otherwise prejudiced him in any way. Although we do not encourage the practice followed here, we find no error in the denial of the motion to quash.

[761]

■     The second amended petition alleges:[1]

"* * * that Anna Boyce was within the jurisdiction of the Juvenile Court by reason of the following facts:

"The conditions and circumstances of the above-named child are such as to endanger her welfare and the parents fail to provide the care, guidance and protection necessary for her physical, mental and emotion[sic] well-being and have subjected her to depravity, to wit:

"A.   On January 30, 1979, Anna Boyce stated that her father had sexual intercourse with her and as a result, Anna became pregnant and had an abortion.

"B.   Anna has stated that she is afraid that any further contact with her father will result in his establishing a regular sexual relationship with her and removing her from the State.

"C.   Anna's mother, Mary Boyce, has stated that Robert Boyce has had sexual contact with her daughters but she has failed to protect them."

The father filed a demurrer prior to the hearing:

"COMES NOW Robert Boyce and demurs to the Second Amended Petition herein for the reason that the facts set forth therein are insufficient as a matter of law to bring Anna Boyce within the jurisdiction of the Juvenile Court."

ORS 419.484 in part provides:

* * * * *

"(2)   The petition shall set forth in ordinary and concise language such of the following facts as are known and indicate any which are now known:

* * * * *

"(b)   The facts which bring the child within the jurisdiction of the court as provided in subsection (1) of ORS 419.476."

---

[1] The first amended petition, filed the previous month, alleged that "On January 1, 1977 the father of the above named child had sexual intercourse with Anna * * *" and "Robert Boyce has repeatedly made sexual advances toward his daughters * * *." Thus, it is apparent that the juvenile department is trying to do indirectly what it could not do directly.

[762]

The petition is an attempt to bring Anna Boyce within the jurisdiction of the juvenile court by virtue of ORS 419.476:

"(1) The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:
* * *

"(c) Whose behavior, condition or circumstances are such as to endanger his own welfare or the welfare of others; or
* * *

"(e) Either his parents or any other person having his custody have abandoned him, failed to provide him with the support or education required by law, subjected him to cruelty or depravity or to unexplained physical injury or failed to provide him with the care, guidance and protection necessary for his physical, mental or emotional well-being; * * * "

The juvenile department is not contending that it is entitled to prove that the alleged statements by the mother and daughter were true so that the court would acquire jurisdiction over the daughter. It does contend that even if the statements were shown to be false, the court could find the daughter within its jurisdiction due to the seriousness of the mere making of the statements. The attorney for the juvenile department told the trial court, "It shows severe psychological problems if they're not telling the truth."

As the second amended petition is framed, the truth or falsity of the statements by the daughter is not an issue. The demurrer admits only that the statements were made.

The statement set forth in allegation "A" was made on one occasion—January 30, 1979. Allegation "B" is not a statement of fact but an expression of an opinion by the daughter. Allegation "C" is a statement by the mother and does not bear directly upon the mental state of the daughter.

The petition must allege sufficient facts to bring the daughter within the jurisdiction of the juvenile court. None of the three allegations would allow the admission of evidence that the daughter was suffering from a mental disturbance. Assuming for the sake of argument that the second amended petition alleges that the daughter has a mental disturbance, there is no allegation that the parents are failing to provide her with the necessary care. For all we know the parents may be paying for daily treatment by the area's most renowned psychiatrist.

The trial court should have sustained the demurrer. We do not reach the remaining assignment of error.

Reversed.

**GILLETTE, J.,** concurring.

I join in the majority opinion, but wish to add a few points for emphasis.

The allegations of the petition here are demurrable because, to be very specific, the fact that a child makes serious charges to a third party concerning her parent or parents does not, standing alone, create grounds for juvenile court jurisdiction. The fact that one of the child's parents—but not one against whom the allegations are made—makes corroborating statements to third parties does not create juvenile court jurisdiction. The state's claim that these facts, considered together or separately, do create juvenile court jurisdiction is wrong. The fact of the statements, standing alone, does not show that the child meets the criteria of either ORS 419.476(1)(c) or (e), the only subsections under which the state claims jurisdiction:

ORS 419.476(1)(c) provides that a juvenile is within the jurisdiction of the court where the child's

> "* * * behavior, condition or circumstances are such as to endanger his own welfare * * *."

The state's claim here is that *the mere making of the statements* shows that the child's "behavior, condition or circumstances" endanger her welfare. Accepting the state's premise that the child's making of the statements shows that she is disturbed and requires care, the state's claim nonetheless fails because it is nowhere alleged that the parents are not making reasonable efforts to deal with her disturbed state. It is only if they are *not* doing so that the child may be "endangered" in a sense which justifies interference by the state with the parent-child relationship.

ORS 419.476(1)(e) provides that a juvenile is within the jurisdiction of the juvenile court when

> "* * * his parents * * * have * * * failed to provide him with the care, guidance and protection necessary for his physical, mental or emotional well-being * * *."

Precisely the same analysis made with respect to subsection (c), *supra,* applies here: the petitioner's allegations may be sufficient to show that this child is disturbed, but the *fact of distrubance* does not show any failure to provide care. The petition alleges no facts which would show the additional element of parental culpability under subsection (e). The demurrer should have been sustained.

It is useful to note that the pleadings here are not deficient by inadvertence. The whole course of the proceedings demonstrates that the state intended to test the limits of jurisdiction in this case: the only evidence it offered was the fact that the statements were made. Neither mother nor daughter testified.

It is true that what the child is reported to have said is most serious, perhaps all the more serious because of their sexual nature. One wonders if the state would have even considered bringing this petition if the child had been telling third parties that her father was a three-headed, green-skinned Martian

[765]

bent on destroying the world, and her mother had agreed. In any event, we hold today that the state is not authorized to become the guardian of every child who makes wild statements. That was all that was alleged—or proved—here.

Buttler and Joseph, JJ., join in this opinion.

**ROBERTS, J.,** dissenting.

I dissent because I believe the allegations in the second amended petition are sufficient to bring the daughter within the jurisdiction of the juvenile court. The majority and the concurrence apparently believe that the petition must allege that the daughter was suffering from a mental disturbance and that even if that were alleged, the petition must then allege that the parents were failing to provide her with necessary care. That conclusion simply is not applicable to the facts of this case.

On the father's challenge to the sufficiency of the allegations I conclude first, that the allegations that the daughter and mother made statements are the facts which must be determined by the evidence to be true or false. And second, the allegations that the statements were made, if proven to be true, demonstrates that the daughter's "behavior, condition or circumstances are such as to endanger [her] own welfare. * * *" The pleadings in this case have apprised the father of what he must meet, *i.e.,* that the daughter and mother have made statements that he has had sexual relations with the daughter. I would hold that the motion to strike and the demurrer were properly denied.

The majority, because of its disposition of the case, does not reach father's assignment of error which questions the sufficiency of the evidence, as a matter of law, to justify making the daughter a ward of the

juvenile court. The father argues that the statements, without an inquiry into the truth or falsity of those statements, are not sufficient evidence to give the court jurisdiction and that there was no showing that the facts as they existed at the time of the hearing justified the court's interference. I disagree with that contention also.

The evidence of the statements of the daughter and the mother which was presented at the hearing was as follows. Palmer and Conrad, CSD workers, testified that the daughter told them that she had had sexual relations with her father; and police officer Cox, and Deitz, a long time friend of the family, testified that she made the same statements to them. Conrad also testified that the daughter told her that a pregnancy which was aborted "must have been her boy" and that she continued to have contact with her father. Deitz testified that the daughter told her she became pregnant by her father, and that her father would not leave her alone sexually. Deitz also testified to her own observation of the daughter and the father when they were together and that she did not consider it normal. Deitz testified to an incident she observed between the daughter and the mother when the daughter came home from school for lunch and the mother was verbally abusive to her. When Deitz told the mother she should not treat the daughter in that manner, Deitz testified that the mother told her about the sexual relationship between the daughter and the father. Deitz testified that the daughter later told her the same thing.

In addition to Deitz's testimony regarding the mother's statements, Palmer and Conrad testified that the mother had made the same statement to them but said that it was based on what the daughter had told her.[1]

---

[1] The mother did not testify. She was present but not represented by counsel. The father's attorney recommended a court appointed attorney for

The father challenges th evidence presented as summarized above because he maintains it is all hearsay and is therefore not admissible.

In *Sheedy v. Stall,* 255 Or 594, 468 P2d 529 (1970), the Supreme Court said, "[t]he correct application of the rule that hearsay evidence is not admissible is one of the most difficult tasks in the law. * * *" 255 Or at 596. The court then examined the reasoning behind the hearsay rule. It said:

"Hearsay evidence is excluded because of its untrustworthiness. The declarant's accuracy and veracity cannot be tested by cross-examination. *State v. Kendrick,* 239 Or 512, 515, 398 P2d 471 (1965). It is not the untrustworthiness of the testimony of the witness on the stand who is asked to testify to what the declarant said that causes the exclusion of hearsay testimony. The credibility of the witness can be tested by cross-examination. The problem of the trustworthiness of the witness in the courtroom is the same whether the witness is testifying to another's conduct or to another's words. It is the untrustworthiness of the declarant's statement that causes hearsay testimony to be excluded.

"For this reason, if a witness testifies to a statement made by a declarant and such evidence is not introduced to prove the truth of the content of the declarant's statement, such testimony is admissible because it is not hearsay.

"* * * * *

---

her, but the colloquy between the court and father's attorney indicated the mother thought she did not need an attorney because she had done nothing wrong. Shortly after the father's case had begun—only hospital records had been introduced—counsel for the juvenile department asked the court if he might call another witness in anticipation that the hearing would continue the following day and that he would need other witnesses. The court indicated it would allow that request and counsel called the mother. The father then rested his case and the mother did not testify. The father testified only in the dispositional phase of the hearing. The daughter testified in the dispositional phase of the hearing in chambers, but she did not testify in the adjudicative stage. By agreement of counsel and court, no one asked her about the statements, or the truth of the statements, because the court thought it would be damaging to her mental and emotional state to make any inquiry.

"McCormick writes: 'The hearsay rule forbids evidence of assertions to prove the facts asserted in them. Manifestly, proof of utterances and writings may be made with an almost infinite variety of other purposes, not resting for their value upon the veracity of the out-of-court declarant and hence falling outside the hearsay classification.' McCormick, Evidence, 463, § 228 (1954).

"We have adopted the general principle that evidence of a third person's out-of-court statements is admissible 'when the extra-judicial statement of a third person is not offered to prove the truth of the utterance, but only to show that the statement was made.' *Marr v. Putnam,* 213 Or 17, 321 P2d 1061 (1958).

"\* \* \* \* \*." 255 Or at 596-98.

In this case, if the language attributed to the daughter had been offered to prove the truth of the factual assertions contained in the statements, there would have been a hearsay problem. However, the statements attributed to the daughter were not offered to prove that the daughter had in fact had sexual relations with the father, but only that the statements had been made.[2] The issue was whether the daughter should be made a ward of the court. The statements, as evidence going to that issue, were not hearsay. *See Utley v. City of Independence,* 240 Or 384, 402 P2d 91 (1965).

Whether the statements are true or false is beside the point for purposes here. I would conclude that in this situation, where the daughter has repeated the statements over a significant period of time and to a number of different people, the evidence is sufficient to meet the statutory requirement that the daughter's "behavior, condition or circumstances are such as to

---

[2] Not only were the allegations couched in terms requiring only proof that the statements were made and not the truth of the statements, but in the preliminary arguments on the motion to strike and the demurrer the deputy district attorney stipulated that there would be no attempt to prove the truth of the statements but only that the statements were made.

endanger [her] own welfare." The evidence was sufficient to justify making the daughter a ward of the juvenile court.[3]

For these reasons I dissent.

Thornton, J., joins in this dissent.

---

[3] I disagree with the statement in the concurring opinion that "the pleadings here are not deficient by inadvertence. The whole course of the proceedings demonstrates that the state intended to test the limits of jurisdiction in this case * * *." (p. 765.) The mother was in fact called to testify at one point as explained in n 1. A motive of the state should not be read into the fact that the daughter did not testify. It would not be unusual for a girl to refuse to testify about sexual acts with a particular person if a possibility existed that, after the hearing, she would be required to return to a living situation with that person.