Argued and submitted September 17, affirmed November 17, 1980,
reconsideration denied January 18,
petition for review denied February 4, 1981 (290 Or 449)

In the Matter of Newman, Sherri, Avery, Jr.,
and Gary, Minor Children.

STATE ex rel JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY et al,
*Respondents,*

*v.*

NEWMAN,
*Appellant.*

(No. 56,135, CA 17140)

619 P2d 901)

Robert L. Kirkman, Portland, argued the cause for appellant. With him on the brief was Warren, Kirkman & Allen, Portland.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent State ex rel Juvenile Department of Multnomah County. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

No appearance for respondents Sherri, Avery, Jr. and Gary Newman, Children.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

The father appeals from an order terminating his parental rights in three children, whose ages at the time the petition was filed were 11, 10 and 8. The father contends that procedural errors were committed by the trial court, that the evidence did not justify termination, and that the state was barred by laches from instituting this proceeding and was estopped from doing so because it had unsuccessfully petitioned for termination of the father's parental rights in an earlier proceeding. We affirm.

The petition initiating this proceeding was filed on March 8, 1979. An amended petition was subsequently filed, alleging:

"* * * * *

"B.   Avery Newman, Sr., is unfit by reason of conduct and condition seriously detrimental to the children and integration of the children into the home of the father is improbable in the foreseeable future due to conduct and conditions not likely to change, to wit:

"1.   On or about October 3, 1977, in the State of Missouri, County of Benton, Avery Newman, Sr., was sentenced to ten (10) years in prison.

"2.   The acts of the father and his conduct have made the appropriate foreseeable return of the children impossible in the near future.

"3.   The marital relationship between the mother and the father has been such that the children have been out of contact with their father, have become psychological strangers to him and have become acclimated to a different environment. The alienation of the parent-child relationship has come about as a partial result of the misconduct and neglect of the father.

"4.   The father has subjected the children to physical abuse and or inappropriate discipline.

"* * * * *."

Two years earlier, the state had sought to terminate the father's parental rights through a petition which alleged:

"* * * * *

"b.   The father of the above-named children has failed and neglected without reasonable and lawful cause to provide for the basic physical and psychological needs of the children for one year prior to the filing of this petition, to-wit:

"1. The father of the above-named children has failed to visit, contact or communicate with the children or with the custodian of the children in any manner other than incidental since October, 1975.

"2. The father of the above-named children has failed to provide care or pay a reasonable portion of substitute physical care and maintenance for the children since October, 1975.

"* * * * *."

In the first proceeding, we reversed the trial court's termination order because we concluded that the evidence did not establish "the father's neglect was without just and sufficient cause." *State ex rel Juv. Dept. v. Newman,* 33 Or App 357, 361, 576 P2d 810 (1978). We noted, however:

"There was evidence that the father's parental rights might have been subject to termination because of other conduct on his part but such conduct was not alleged in the petition." 33 Or App at 361, n 2.

The father contends that all facts upon which the state now relies were known to it at the time of the earlier termination proceeding, with the exception of his conviction and incarceration in Missouri.[1] He therefore argues that the present proceeding is barred by res judicata or collateral estoppel. The father also argues that the state's "splitting its claim" deprived him of due process and equal protection.[2]

The parties cite no previous Oregon case—and we find none—which defines whether, or to what extent, res judicata and related doctrines apply in proceedings to terminate parental rights. However, assuming, without deciding, that there may be circumstances where res judicata

---

[1] The trial court hearings in the first termination proceeding were conducted between May 13, 1977, and June 2, 1977, and the trial court announced its decision to terminate parental rights at the conclusion of the hearing on June 2. On July 8, a hearing was held to supplement the record in respects not relevant here. The Missouri verdict convicting the father of stealing was returned on June 23 or June 24, 1977. The judgment and sentence of the Missouri court was entered on October 3, 1977.

[2] Because we conclude that the second proceeding involved new facts, in addition to those pre-existing the first proceeding, we also conclude that there was no "splitting" of the state's claim. Accordingly, the premise on which the father bases his due process and equal protection claims does not exist, and we do not pursue that contention further.

would be applicable to termination proceedings, the father is not entitled to invoke the doctrine here.

In *McAllister v. Charter First Mortgage, Inc.,* 279 Or 279, 567 P2d 539 (1977), the Supreme Court stated that "res judicata applies only to those claims which might have been litigated as incidental to or essentially connected with the prior case." 279 Or at 285. Subsequently, in *Troutman v. Erlandson,* 287 Or 187, 598 P2d 1211 (1979), the court stated:

> "For res judicata purposes, a 'claim' or 'cause of action' does not mean the particular form or proceeding by which a certain kind of relief is sought but, rather, a group of facts which entitled plaintiff to relief. * * *
> "* * * * *
> "* * * At the very least, *any factual basis* for relief that could have been asserted by plaintiff in the first case should not be the basis for relief in this second case." 287 Or at 201, 203. (Emphasis in original.)

Here, however, there was at least *one* new substantial material fact: the father's criminal conviction and the imposition of a ten year prison sentence, which came into being between the first and second termination proceedings. The father argues, however, that res judicata or analogous concepts nevertheless apply, because (1) incarceration *alone* is insufficient to warrant termination (citing *State v. Grady,* 231 Or 65, 371 P2d 68 (1962), and *State ex rel Juv. Dept. v. Kenneth M.,* 27 Or App 185, 555 P2d 933, *rev den* (1976)); and (2) the *other* evidence or facts upon which the state relies were or could have been considered in the first proceeding and cannot be readjudicated now.

Although we do not accept the father's argument, we do not go so far as to hold that collateral estoppel may never preclude relitigation of a fact in controversy in the first termination proceeding with respect to which there has been a final factual finding. As in other litigation, there must come a time when factual disputes reach a state of final respose—sound public policy demands it. But we need not pursue the extent to which collateral estoppel may be applicable to this type of proceeding because the father here takes the extreme view that if the second proceeding may be maintained at all, *only* facts arising subsequent to

the first proceeding may be considered in the second one, and that position we reject.

Termination of parental rights proceedings generally arise out of a continuing and cumulative set of circumstances, in which the child is within the juvenile court's jurisdiction and, often, is subject to agency custody or supervision. An order *denying* a petition to terminate parental rights seldom leads directly to the termination of wardship or of agency involvement. It is one thing to say that such an order bars a second termination proceeding when there has been *no* change in the operative facts which led to the initiation of the first proceeding; it is very different—and clearly wrong—to contend that, if new substantial material facts come into existence which justify the filing of a new termination proceeding, evidence and facts which were or could have been considered in the earlier proceeding cannot be considered or reconsidered in the later one.

In *Greisamer and Greisamer,* 276 Or 397, 555 P2d 28 (1976), the father appealed from a dissolution decree which awarded custody of two children to the mother, notwithstanding the previous award of custody to the father in a separation proceeding. The father contended that evidence of his conduct prior to the separation order could not be considered in the subsequent dissolution proceeding. The court disagreed, stating:

"* * *[T]he father's deficiencies existing at the time of the first decree if they are relevant to the inquiry must be put on the scale just as they were put on the scale in the first proceeding. It is apparent that the father was awarded custody in spite of his shortcomings only because the mother was not in a position economically at that time to do even as well as the father, and that if the mother had not been so handicapped the custody would have been awarded to her in order to serve the best interests of the two children. It is patent, then, that the evidence relating to the husband's custodial qualifications existing at the time of the first proceeding are an essential ingredient in the second proceeding in determining what would best serve the children's interests.

"This conclusion does not offend the policy underlying the principle of res judicata. This is not an instance where

the plaintiff is seeking to readjudicate a question previously decided; plaintiff is asking only that facts previously considered but which are essential to decide an existing and new dispute, be used as evidence. * * *" 276 Or at 401.

The reasoning in *Greisamer*[3] is as applicable to termination proceedings as to child custody determinations in dissolution proceedings. *Cf. State ex rel Juv. Dept. v. Robinson,* 31 Or App 1097, 1100, 572 P2d 336 (1977), *rev den* 281 Or 531 (1978). In each case the best interests of the child is the overriding consideration. We therefore conclude that, when a second termination proceeding is not itself barred, the proof is not limited by res judicata or collateral estoppel principles to facts or evidence which was not considered in, or which came into being after, the first proceeding.[4]

---

[3] In both instances the best interests of the child are of paramount concern, and in resolving that issue all of the relevant facts are to be considered. Where change of custody is sought, however, the initial inquiry of whether there has been a change of circumstances relates to changes which have occurred since the last custody order. *See Padbury and Padbury,* 46 Or App 533, 612 P2d 321 (1980). Once it is determined that there has been a sufficient change of circumstances to justify consideration of a change of custody, the *Greisamer* rationale comes into play.

[4] We also disagree with the other point the father makes in connection with this argument—that incarceration alone *cannot* be sufficient to warrant termination of parental rights. We stated in *State ex rel Juv. Dept. v. Kenneth M.,* 27 Or App 185, 555 P2d 933, *rev den* (1976), that "[i]ncarceration of a parent alone *is not cause* for termination of that parent's rights." 27 Or App at 188 (Emphasis added). Our authority for that dictum was *State v. Grady,* 231 Or 65, 371 P2d 68 (1962), where the Supreme Court stated "[t]he rights of parents are *not necessarily* terminated *as a matter of law* because of a parent's incarceration * * *." 231 Or at 67 (Emphasis added). Our dictum in *Kenneth M.* should not be understood as going beyond the Supreme Court's language in *Grady,* or as implying that a parent's incarceration cannot be found factually sufficient to warrant termination absent other facts which would constitute a basis for termination independent of the imprisonment. For example, where a parent is imprisoned for life and other sources of familial care and custody are absent, it would seem clear that the combination of facts *could* justify termination under ORS 419.523(2), although the circumstances other than the parent's incarceration would not otherwise support termination.

In *State ex rel Juv. Dept. v. Moyer,* 42 Or app 655, 601 P2d 821 (1979), *rev den* 288 Or 633 (1980), we stated, "incarceration *cannot constitute abandonment* which alone would justify termination of parental rights." 42 Or App at 661 (Emphasis added). We understand our language in *Moyer* to mean that, as a matter of law, incarceration cannot in itself constitute *abandonment. See Grady,* 231 Or at 67. But we do not understand our *Moyer* language or *Grady* to mean that incarceration *cannot* be the basis for terminating parental rights under ORS 419.523(2). We do not expect, however, that a parent's imprisonment, absent other facts *independently* militating in favor of termination, would *frequently* be factually sufficient to justify termination.

Here, a new substantial material fact or facts existed; the second proceeding was not barred by the fact of the first, and evidence and facts available or adduced at the time of the first proceeding could be considered in the later proceeding.

■ The father's next argument, that this proceeding was barred by laches, rests on the proposition that the facts relied on by the state were known to it for periods ranging from 18 months to four years before the termination petition was filed. The argument does not require discussion other than to point out that if it were valid, the longer CSD worked with the parents and children in order to avoid termination the greater would be the chance that termination proceedings would be barred as a matter of law. Because that result would be contrary to the primary thrust of the Children's Services Division's function of maintaining the family unit, if reasonably possible, we reject the argument.

■ The father also contends that the trial court erred in three of its procedural or evidentiary rulings. First, he argues that the court erred in denying his motion to quash the return of service and the summons. The summons did not, as ORS 419.486(2) requires, contain "a brief statement of the substance of the facts" bringing the children within the court's jurisdiction. Instead, the summons incorporated by reference the paragraph of the petition attached to it in which the facts were set out. We rejected an identical contention in *State ex rel Juv. Dept. v. Boyce,* 47 Or App 759, 615 P2d 385 (1980), where the claimed defect in process neither denied actual notice nor created prejudice. For the same reasons, we reject the father's contention here. We note, however, as we did in *Boyce,* that "we do not encourage the practice followed here." 47 Or App at 761. Our opinion in *Boyce* should not be understoood as sanctioning noncompliance with ORS 419.486, or as deciding that such noncompliance *cannot* be prejudicial in any case.

The father's next procedural argument is that the court erred by denying his motions to strike the amended termination petition and, alternatively, for a continuance of the hearing. The court allowed the amendment of the petition upon the state's *ex parte* motion. The amended

petition was not filed until 11 days before the scheduled hearing date. The amended petition added to the existing allegation of paragraph B(3) the words "[t]he alienation of the parent-child relationship has come about as a partial result of the misconduct and neglect of the father." A new paragraph B(4) was added, alleging that the father had subjected the children to abuse or inappropriate discipline.

Neither amendment influences our decision. It is immaterial whether the father was or was not responsible for the estrangement of the children which resulted from the marital relationship between him and his former wife and from the placement of the children in a foster home setting. *See State ex rel Juv. Dept. v. Moyer, supra,* 42 Or App at 661-62. Although the second added allegation, that the father abused the children or subjected them to inappropriate discipline, was a "substantial departure from the facts originally alleged," ORS 419.500(1), we find that that allegation was not proved and we do not consider it.

■   In any event, allowing the amendment was within the trial court's authority under ORS 419.500, and the denial of the continuance was within that court's discretion under the same statute. The father points to no specific prejudice resulting from the denial of his motions.

■   The third of the father's procedural contentions is that the court erred by admitting in evidence the transcript of his former wife's testimony adduced at the earlier termination hearing. ORS 41.900(8). We need not decide that question, because we find it unnecessary to consider the mother's testimony to affirm the trial court's order over the father's contention that the evidence did not justify termination.

The father is now eligible to apply for parole in Missouri. However, his imprisonment *can* presumably continue until October, 1987, by which time the youngest of the three children will be 17. The children have been in foster care since 1975. They have not had personal contact with the father since *at least* that time. Psychological examinations of the children reveal both their estrangement from, and their sense of fear concerning, the father. The children are now making progress toward adequate

adaptation in their foster home and school environments. In the case of at least two of the children, such adaptation is of recent origin. In sum, the children are now entering a pattern which, hopefully, will result in their ability to lead normal lives. The father is physically and psychologically estranged from them, and the likelihood of a parent-child relationship between him and them ever resuming is as remote as it appears to be undesirable.

Affirmed.