OPINION
WILLIAMS, Associate Justice.
This is a dispute between the Appellant, the Children and Family Services Program of the Social Services Department of the Confederated Tribes of the Grand Ronde Community of Oregon (“CFS”) and the Appellee, M.Q., father of C.Q., a minor, over whether the Tribal Court correctly denied the CFS petition to terminate Father’s’ parental rights to his son, C.Q. Father argues that, as a matter of law and fact, the Tribal Court correctly concluded that the CFS did not meet its burden of proof and failed to show, beyond a reasonable doubt, that he was an unfit parent. The CFS argues, as both a matter of law and fact, that the Tribal Court failed to meet its statutory requirements and that Father’s criminal and mental health history, along with other factors, were sufficient to demonstrate, beyond a reasonable doubt, Father’s lack of fitness as a parent. The CFS also argues that the Tribal Court failed to meet its statutory requirements by not assessing the severity of the impact on the minor. Finally, the CFS challenges the Tribal Court’s dismissal of the termination petition with prejudice.
I. BACKGROUND
The CFS first intervened to protect the minor in late 2006, which the Tribal Court granted on January 23, 2007. Having difficulty locating the parents, six months later in August 2007 the CFS took custody of the minor, at the age of 15 months, when his mother was arrested. Four months later, in December 2007, the Tribal Court established the minor as a youth-in- *3 need-of-care and issued a dispositional order on January 10, 2008.
Both parents have a history of methamphetamine abuse, Father since his early teen years. Father also has a criminal history beginning in 1989 that includes several periods of incarceration and a wide variety of convictions. In January 2008, Father began outpatient treatment and was diagnosed with a variety of drug and alcohol dependencies. Since both parents engaged in services, after seven months of foster care, the CFS returned the minor to his parents in March 2008. In April 2008, Father completed his outpatient treatment. Three months after that, in July 2008, he was evaluated by a psychologist and based, in part, on his analysis, the Tribal Court adopted the CFS recommendation for a return to parent permanent plan on August 19,2008.
However, Father failed to engage with a recovery support group until July 2009, fifteen months after his outpatient treatment ended, and in August relapsed into drug use and fled with the minor. On August 20, 2009, the Tribal Court ordered the CFS to take physical custody of the minor, which occurred when the parents were arrested for custodial interference in September 2009.
On January 4, 2010, Father was arrested and incarcerated for a probation violation and for interfering with an officer. On April 15, 2010, the Tribal Court adopted the CFS recommendation that the minor’s plan be changed to one of permanent foster care in part. Father continued to have issues with substance abuse until his latest incarceration on July 7, 2010. After his release on July 26, 2010, Father began outpatient treatment again, in August, as a condition of his probation, which he completed in July 2011.
In January 2011, a hearing was held on the CFS request to change the minor’s plan from permanent foster care to adoption (with parental rights terminated). On March 15, 2011, the Tribal Court changed the minor’s plan to one of terminating parental rights to allow for adoption and ordered the CFS to file petition to terminate the parental rights of both parents. In January 2012, the CFS filed the petitions to terminate the parents’ rights. Father’s last post-incarceration supervision was on March 28, 2012, which he successfully completed. The trial was held in May and June 2012.
On August 18, 2012, the Tribal Court terminated the parental rights of Mother, but a month earlier, on July 20, 2012, dismissed the petition to terminate the parental rights of Father. In its decision on Father, the Tribal Court found that it was not convinced beyond a reasonable doubt that he was an unfit parent stating that when “the decider of fact doubts that a material allegation has been proven, if the doubt is reasonable ..., then the allegation has not been proven beyond a reasonable doubt.”
On September 18, 2012, the CFS filed a notice of appeal of the Tribal Court’s dismissal of the petition to terminate the parental rights of Father.
II. JURISDICTION & STANDARDS OF REVIEW
We have jurisdiction under Tribal Code § 310(h)(2) to review final orders and judgments of the Tribal Court. We review the various aspects of the Tribal Court’s decision based on whether the issue is one of law, of fact, or of both. For questions of law alone or for mixed questions of law and fact, we review de novo, i.e. from the same position as the trial court, considering the matter anew as if no decision previously has been rendered. See, e.g., Lawrence v. Dept. of Interior, 525 F.3d 916, *4 920 (9th Cir.2008); Freeman v. DirecTV, Inc., 457 F.3d 1001, 1004 (9th Cir.2006); Mathews v. Chevron Corp., 362 F.3d 1172, 1180 (9th Cir.2004) (de novo review for mixed questions of law and fact); see also Rabkin v. Oregon Health Sciences Univ., 350 F.3d 967, 971 (9th Cir.2003) (“When de novo review is compelled, no form of appellate deference is acceptable.”); see also ORS 19.415(3)(a)(when appellate court reviewing termination of parental rights it “shall try the cause anew upon the record”)
For questions of fact alone, we review with deference to the court’s factual findings, especially credibility findings, unless clearly erroneous. See, e.g., In the Matter of C.G., Case No. confidential (Grand Ronde Tribal Ct.App. Dec. 12, 2005); McClure v. Thompson, 323 F.3d 1233, 1241 (9th Cir.2003). If the trial court’s account of evidence is plausible in light of the entire record, the court of appeals may not reverse even if it would have weighed the evidence differently. See, e.g., United States v. McCarty, 648 F.3d 820, 824 (9th Cir.2011).
III. DISCUSSION
A. The Tribal Statute
The Children and Families Ordinance, Chapter 301, as last amended on September 12, 2012, lays out a three part test for the discretionary termination of parental rights:
A termination of parental rights may be appropriate if: i) an adoptive resource, with whom the child has been placed for at least one year, is available; ii) the parent is unfit as described in Part II(m)(2)(B)(i); and iii) termination is in the best interests of the child as described in Part II(m)(2)(B)(ii). Children and Families Ordinance, Tribal Code Chapter 301, Part II(m)(2)(B).[1]
On appeal, only the last two parts are at issue: 1) whether the CFS successfully met the burden of demonstrating Father’s unfitness as a parent, 2) whether the trial court incorrectly added a temporal element to that test, and 3) whether the second part, determining parental fitness, must also include consideration of the third part, what is in the best interests of the child, or whether the third part is only reached after the court first determines that a parent is unfit.
1. Father’s Fitness as a Parent
Chapter 301, Part II(m)(2)(B)(i) defines unfitness:
The parent is unfit by reason of conduct or condition seriously detrimental to the child and, given such conduct or conditions, integration of the child into parental care is improbable within a reasonable time. Conduct or conditions which render a parent unfit are:
a. Emotional illness, mental illness or mental deficiency of the parent of such a nature and duration as to place the child’s physical or mental health at risk;
b. Unresolved addictive or habitual use of alcohol and/or drugs to the extent that the ability to parent has been substantially impaired;
[[Image here]]
e. The parent ... has failed to maintain contact with the child for a substantial period of time and there is no *5 genuine effort by the parent to assume his/her parental role; or
f. Criminal conduct that impairs the parent’s ability to provide adequate care for the child.
In this case, to terminate Father’s parental rights as the father of the minor, the CFS must show, beyond a reasonable doubt, that Father is unfit as a parent for one of the four or more reasons cited above.
The Tribal Court found that “considerable doubt” existed for each of these grounds. First, the court concluded that evidence of Father’s testimony about his remission and current recovery efforts along with comments by his Probation Officer were credible enough to raise reasonable doubts as to whether his past substance abuse was sufficient to find Father unfit as a father. Second, for similar temporal reasons, the court found that Father’s success in avoiding an arrest or conviction for almost two years raised reasonable doubts as to whether his past criminal behavior was sufficient to find him unfit as a father. Third, the court was unwilling, on the evidence provided, to find a sufficient causal connection between Father’s mental health issues and his ability to be a fit father. As the court correctly noted, “[s]imply having a mental illness or condition does not render a parent unfit.” Fourth, the court strongly rejected the allegations made by the CFS that Father had made no genuine efforts to assume his role as a father, noting his requests at various court hearings for visitation, finding credible Father’s testimony about his efforts and desires to assume his role as the father of the minor, and noting the existing court order barring Father from visitation since April 15, 2010. Finally, the court concluded that the CFS had failed to assess Father’s fitness as a parent separately from his wife’s fitness and that this failure also raised reasonable doubts as to all four alternative grounds for finding Father unfit as a father.
On appeal, the CFS argues that the trial court erred in weighing the facts and that Father was unfit for one or more of the four statutory reasons of mental health issues, lack of contact with the minor, criminal conduct, and/or substance abuse. The CFS asserts that 1) its evidence of a detrimental mental illness was sufficient to show an existing anti-social personality disorder that would impact the minor especially if Father’s life remained unstable; 2) the trial court simply failed to consider the evidence of the impact of Father’s past criminal conduct on the minor; 3) the weight of evidence demonstrated unresolved substance abuse problems; and 4) that the trial court, in determining whether Father made a genuine effort to resume his parental role, incorrectly focused on a court order barring visitation instead of focusing on whether he made meaningful efforts to address the underlying problems that led to that earlier court order.
As noted above, in Part II, we review findings of fact with deference to the trial court, especially credibility findings, and will uphold them unless clearly erroneous. Furthermore, the statute states that, “The Tribe disfavors termination of parental rights”, and requires the CFS to meet the highest standard of proof—beyond a reasonable doubt. Part II(m)(l) and Part II(m)(5)(B)(iii). As to its findings of fact, we see no clear error by the trial court and find its account of the evidence plausible in light of the entire record and the applicable burden of proof.
2. Temporal Element
The CFS also argues that the trial court incorrectly included a temporal element in determining that the CFS had not met its burden of proof because of the lack *6 of evidence of current criminal activity or substance abuse. The CFS argues that the plain language of Part II(m)(2)(B)(i)(b) and (f) requires the trial court had to find that the criminal conduct and substance abuse of Father, whether past or current, did not currently impair his ability to parent or provide adequate care for the minor. The CFS asserts that the trial court failed to make this finding and instead focused only on the lack of evidence of current criminal or substance abuse conduct.
We disagree. The trial court simply found that the lack of evidence of current activity failed to meet the burden of proof, beyond a reasonable doubt, especially in light of other evidence presented at trial. A temporal element is simply one eviden-tiary fact to be weighed in the context of all other facts presented at trial.
8. Interplay of Steps 2 and 3 of Part II(m)(2)(B)
The CFS also argues that the trial court erred in examining only Father’s condition, in assessing his fitness as a father, absent any consideration of the impact to the minor if he was returned to Father. The CFS asserts that the Children and Families Ordinance is “nearly identical” to the comparable Oregon statute, ORS § 419B.504[2], and that this Court should adopt an interpretation that requires the Tribal Court to analyze the best interests of the child, pursuant to Part II (m) (2)(B) (ii), as part of its analysis of Father’s fitness as a father, under Part II(m)(2)(B)(i). As support, the CFS cites Oregon cases interpreting ORS 419B.504 that require courts to identify the parent’s condition and then measure the impact of that condition on the child, and to consider the existence and degree of a bond between the child and parent as part of determining the fitness of the parent as well as the potential harm to the child of removal from the foster parents to which he or she had bonded, i.e., a child specific inquiry. State ex rel. State Office for Services to Children and Families v. Stillman, 333 Or. 135, 36 P.3d 490 (2001); State ex rel. Juvenile Dept. of Multnomah County v. F.W., 344 Or. 670, 189 P.3d 25 (2008). The CFS argues that a similar child specific inquiry is the intent of the Tribes’ Part II(m)(2)(B) and that the Tribal Court erred, as a matter of law, by not considering the requirements of Part II(m)(2)(B)(ii) when analyzing whether Fa *7 ther was a fit father under Part II(m)(2)(B)(i).
When courts interpret statutes and the legislative intent behind such statutes, they use a number of rules. The first inquiry is whether the statute is clear on its face. See, e.g., Stillman, at 145, 36 P.3d 490, citing PGE v. Bureau of Labor and Industries, 317 Or. 606, 610-11, 859 P.2d 1143 (1993) (to determine intent look first to text and context of the statute).
The Tribe’s statute does not explicitly state that the child’s best interests are part of the test of parental fitness. Nor does the language or factors listed in determining a child’s best interests in Part II(m)(2)(B)(ii), on their plain terms, require their consideration in determining the fitness of the parent. The Tribe’s statute does not read like the Oregon statute, which specifically allows a court to determine other factors beyond those listed. See ORS 419B.504 (“In determining such conduct and conditions, the court shall consider but is not limited to the following: ”) [emphasis added]. Instead, the Tribe’s statute simply lists the six factors that can lead to parental unfitness (the language of which is almost identical to the State statute). If the Tribal Council modeled its statute on ORS 419B.504, as the language suggests and the CFS asserts, then we must assume that the Tribal Council deliberately did not include the State’s language allowing trial courts to go beyond the six factors listed. Finally, the third part of the Tribe’s statutory test can stand alone. For example, a parent might be found unfit, but termination of the parental rights considered not appropriate because it is not in the best of the interests of the child due to the factors listed. Thus, the plain language and structure of the Tribe’s statute do not require the trial court to determine the best interests of the child if it does not find a parent unfit and a parent’s fitness is not judged by the child’s interests but by whether the parent has been shown, beyond a reasonable doubt, to be unfit based on one of the six factors listed in Part II(m)(B)(2)(i).
B. The Evidentiary Standard & Best Interests of the Child
The Tribe’s use of the “beyond a reasonable doubt” is a very high standard of proof usually found in criminal statutes. In this case, the trial court found that the evidence presented by the CFS at trial was not sufficient to meet this evidentiary standard. Under this standard, it will be a rare case in which a parent’s rights are terminated, because the factors listed in the Tribe’s statute are difficult to prove beyond a reasonable doubt. See, e.g., Santosky v. Kramer, 455 U.S. 745, 768, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (psychiatric evidence required in parental terminations is “rarely susceptible to proof beyond a reasonable doubt”).
Furthermore, if the Tribal Council wants the best interests of the child to be part of the test for parental fitness, then it must revise its statute to either, like Oregon, allow the trial court to consider other factors beyond the six listed in the ordinance, or explicitly require the trial court to examine the best interests of the child as part of the parental fitness test.
C. Dismissal with Prejudice of Petition to Terminate Parental Rights
Finally, the CFS argues that it is inappropriate to dismiss, with prejudice, petitions to terminate parental rights given the nature of such cases and the cumulative impacts of a parent’s past behavior. See, e.g., In re L.O.K., 174 N.C.App. 426, 621 S.E.2d 236, 241 (2005); In re Commitment of Marilyn S., 233 A.D.2d 155, 156-57, 649 N.Y.S.2d 671 (1996). Father argues that such a dismissal is limited in its *8 impact because old facts can be reviewed in future parental rights terminations in light of new facts citing to In the Matter of Newman, 49 Or.App. 221, 619 P.2d 901 (1980).
We agree with the CFS that a dismissal with prejudice in parental rights termination cases is inappropriate. Courts do not consistently apply the doctrine of res judicata in a manner that provides much guidance in this context, but we agree with the reasoning of those courts that have addressed this matter directly. The cumulative effect of parental behavior is always relevant to such matters and the trial court concluding that it cannot re-litigate such facts and essentially forcing a child to remain in foster care is not an outcome that appears to be supported by the Tribe’s codes or policies. See, e.g., Commitment of Marilyn S., 233 A.D.2d, at 156-57, 649 N.Y.S.2d 671 (“dismissal with prejudice in a termination proceeding would arguably have the clearly undesirable effect of forcing children to remain in foster care until they reach the age of majority, since the petitioner would be precluded from re-filing a termination petition.”).
IV. CONCLUSION
The trial court’s finding that the parent was not unfit, at the time of the hearing, is affirmed. But the trial court’s dismissal of this case with prejudice is reversed and the case is remanded for the trial court to issue its judgment without prejudice.
WE CONCUR: ROBERT J. MILLER, Chief Justice, DOUGLAS NASH, Associate Justice.

. In the trial court decision and in some of the appeals briefs, the Children and Family Ordinance provisions regarding parental rights termination and burdens of proof are cited using an older numbering system, as § 7.10, Ch. II. This opinion uses the current, revised numbering for the ordinance citations.

. "The rights of the parent or parents may be terminated as provided in ORS 419B.500 (Termination of parental rights generally) if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child or ward and integration of the child or ward into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:
(1) Emotional illness, mental illness or mental retardation of the parent of such nature and duration as to render the parent incapable of providing proper care for the child or ward for extended periods of time.
(2) Conduct toward any child of an abusive, cruel or sexual nature.
13) Addictive or habitual use of intoxicating liquors or controlled substances to the extent that parental ability has been substantially impaired.
(4) Physical neglect of the child or ward.
(5) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make it possible for the child or ward to safely return home within a reasonable time or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected.
(6) Criminal conduct that impairs the parent’s ability to provide adequate care for the child or ward.”