IN RE INTEREST OF V.B. AND Z.B., CHILDREN UNDER 18 YEARS OF
AGE.
STATE OF NEBRASKA, APPELLEE, V. R.B. AND H.B., APPELLANTS.
370 N.W.2d 119

Filed July 5, 1985.    No. 84-472.

Paul M. Conley, for appellant H.B.

Roberta S. Stick, for appellant R.B.

Michael G. Heavican, Lancaster County Attorney, and
Mary L. Thramer, for appellee.

James M. Gordon, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from an order of the separate juvenile court of Lancaster County, Nebraska, finding that Z.B., born August 10, 1973, and V.B., born October 9, 1974, are children who lack proper parental care due to the faults and habits of their parents, as defined by Neb. Rev. Stat. § 43-202(2) (Reissue 1978), now replaced by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1984), and terminating the parental rights of R.B. and H.B. as to their two children.

The initial petition was filed on July 18, 1979, and alleged that the two children were without proper care due to the faults and habits of their parents. The juvenile court found that there was no food in the house and that gas utility service had been turned off, even though the parents had sufficient funds. The residence had a strong odor, and animal feces were observed. The children had been physically abused and were only bathed once a month. The court ordered that the children be placed in temporary foster care. Since this initial order, seven review hearings have been held. At the conclusion of each hearing the court has ordered that the children continue in foster care.

Neither parent has provided proper parental care to the children. Since July 1979, the mother, R.B., has been arrested or sentenced on charges of burglary, drug possession, child abuse, trespassing, receiving stolen property, and prostitution. She has attempted suicide, undergone psychiatric counseling, and taken medications for psychological disorders. She has abused her children and failed to adequately feed or bathe them.

The father, H.B., initially attempted to comply with the court's order by attending parenting classes and finding a suitable apartment. However, a short time later, the father lost his job for sexual harassment of a female employee, lost his Social Security disability income, and left the state. He lived in Missouri and Florida from 1981 to 1983, working odd jobs and sleeping in ditches and city missions. While in Missouri, the father was arrested for endangering the health and welfare of a minor. Additionally, H.B. has been diagnosed as a schizophrenic.

On January 10, 1983, a supplemental petition was filed to

terminate parental rights. Following a hearing on March 15 and 16, 1983, the juvenile court found that only the father's rights could be terminated. The court declined to terminate either parent's rights until both parents' rights could be terminated.

On March 13, 1984, a second supplemental petition was filed requesting termination of parental rights. Following a hearing on April 18-20, 1984, the court issued an order terminating the parental rights of both parents. The court stated in its order that sufficient grounds existed to terminate parental rights because both parents had substantially, intentionally, and repeatedly neglected the children and had failed to make reasonable efforts under the direction of the court to correct the conditions leading to the determination of neglect. The statutory authority for this action is found in Neb. Rev. Stat. § 43-292 (Reissue 1984), which states in part:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination.

The parents appeal from the court's order.

The appellants argue that the doctrine of res judicata bars consideration in the present case of evidence adduced at the prior contested hearing in March 1983 in which the parental rights were not terminated. We do not agree that the only relevant time period in this case is from the date of the court's previous order. With respect to custody orders we stated in *Marez v. Marez*, 217 Neb. 615, 620, 350 N.W.2d 531, 534

(1984):

> A custodial order is conclusive as to all matters prior to its promulgation. But the doctrine of res judicata cannot settle a question of a child's welfare for all time to come; it cannot prevent a court at a subsequent time from determining what is best for the children at that time. The usual way of expressing this rule is to say that "circumstances have changed" when the order is no longer in the children's interest.

The reasoning in *Marez* also applies to parental termination cases.

In determining whether a change of circumstances exists so as to modify a juvenile court's previous order to a decision terminating parental rights, the court can use the time period prior to the previous order in conjunction with the time period after the previous order to determine whether there is a requisite change of circumstances since the original disposition order. *In re G. V. and R. P.*, 136 Vt. 499, 394 A.2d 1126 (1978). When a second termination proceeding is not itself barred, the proof is not limited by res judicata or collateral estoppel principles to facts or evidence which was not considered in, or which came into being after, the first proceeding. *Matter of Newman*, 49 Or. App. 221, 619 P.2d 901 (1980). The court would have been barred in the instant case from using evidence prior to the March 1983 order as the sole basis for terminating parental rights. However, the court correctly used evidence from the time period prior to the March 1983 order in conjunction with evidence from the time period after the March 1983 order in determining that there was the requisite change of circumstances or stagnation of conditions to terminate parental rights of the appellants.

The standard of review in appeals from a court's order terminating parental rights is de novo on the record. An order terminating parental rights must be based upon clear and convincing evidence and should only be issued as a last resort and when no reasonable alternative exists. In reviewing termination of parental rights cases de novo on the record, this court must give great weight to the findings of the juvenile court in all cases where there is a dispute in the evidence, since the trial

court heard and observed the witnesses. *In re Interest of L.J., J.J., and J.N.J., ante* p. 102, 368 N.W.2d 474 (1985).

The question of whether the parents have rehabilitated themselves is central to this case. The juvenile court ordered the parents to correct the conditions of neglect, but did not provide them with a rehabilitation plan. We have held that there is no requirement for a court to implement a rehabilitation plan for the parents of a child found to be dependent and neglected. *In re Interest of L.J., J.J., and J.N.J., supra.* In reviewing the evidence after the March 1983 hearing, we must conclude that the parents' behavior has deteriorated.

The mother continues a life of criminal behavior. On November 9, 1983, she was caught stealing goods from a Sears store. In 1984 she was arrested for prostitution. She still refuses to accept any responsibility for her children's emotional and behavioral problems.

Dr. Ann Taylor, a psychiatrist, examined R.B. and the children and testified that the children did not want to return to their mother because they feared that she would not feed them or care for them. Dr. Taylor stated that V.B.'s behavioral problems were a result of being exposed to seductive sexual activity at a very early age. This overstimulation resulted in her masturbating with objects and doing harmful things to herself. When V.B. saw her mother, she would feel scared, upset, and nervous. Dr. Taylor testified that V.B.'s masturbation was related to thinking about her mother and the sexual activities she was exposed to.

Z.B. also continues to have behavioral problems. He stomped a puppy to death. Dr. Taylor testified that Z.B. was also subject to overstimulation at an early age and this has caused many of his problems. Z.B. and V.B. have been observed attempting to have sex together. Dr. Taylor stated that R.B. is unlikely to change her behavior or become rehabilitated, since she refuses to accept responsibility for her children's behavioral problems. Dr. Taylor concluded that R.B. was not capable of providing the stability that the children need, and recommended that it would be in the best interests of the children to terminate parental rights with regard to the mother.

Dr. Mary Munger, a clinical psychologist, evaluated H.B. in

February of 1984. H.B. admitted that the children had been exposed to sexual activity. He refused to accept responsibility for the children's behavioral problems and felt that the children were depressed because they were living in a foster home. Dr. Munger stated that H.B. could not carry on a conversation without sexual preoccupations and that this behavior could be harmful to V.B. and Z.B., who are having problems with sexual overstimulation. In recommending termination of the father's parental rights, Dr. Munger concluded that he should not be allowed to see the children and was not capable of being a parent.

Both parents have failed to improve their behavior or the conditions under which the children would live. Neither parent has a plan to improve his or her ability to be a parent. In view of the record in this case, and in accordance with the allegations in the second supplemental petition and § 43-292(6), we find that the parents have failed to correct the conditions leading to the determination that the juveniles lack the proper parental care by reason of the fault or habits of the parents. We agree with the trial court that parental rights of the parents should be terminated.

These children need stability and permanence in their lives. Since 1979, the children have lived in four foster homes. It is regrettable that the children in this case have had to endure such instability throughout these proceedings. The termination of parental rights must be given serious consideration, and, if possible, the parents should be given the opportunity to correct their behavior. However, we disapprove of the length of time involved in this case. A child must not be made to await uncertain parental maturity. *In re Interest of L.J., J.J., and J.N.J., ante* p. 102, 368 N.W.2d 474 (1985).

We affirm the decision of the separate juvenile court to terminate the parental rights of the appellants.

AFFIRMED.