**Kenneth SLATTON and Patsy Slatton, Appellants,**

v.

**BRAZORIA COUNTY PROTECTIVE SERVICES UNIT, Appellee.**

No. 6–89–9787–CV.

Court of Appeals of Texas, Texarkana.

Jan. 15, 1991.

Gregory L. Donnell, Attorney at Law, Angleton, for appellants Kenneth & Patsy Slatton.

Kelly McClendon, Asst. Dist. Atty., Angleton, Jeffrey Bendit, Brazoria, for appel-

lee Brazoria County Protective Services Unit and, ad litems, for children.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Kenneth and Patsy Slatton appeal from the termination of their parental rights to their five children in a proceeding brought by the Brazoria County Protective Services Unit.[1] The Slattons contend (1) that because all evidence of matters before the 1987 trial was barred by *res judicata*, there was insufficient evidence of material change in circumstances which would support the termination of their parental rights to their children, (2) that termination of their parental rights to a child born after the previous trial was barred by *res judicata* or collateral estoppel, (3) that there was insufficient evidence to support the jury finding that the Slattons engaged in actions which would support termination of parental rights to the four elder children, and (4) that there was insufficient evidence to support the similar finding about the youngest child.

The following is a chronology of the litigation:

April 29, 1985—Brazoria County Protective Services (hereafter the County) originally filed a petition to terminate the parent/child relationship. (At that time the Slattons had three children: K.A. Slatton, D.A. Slatton, and L.A. Slatton.)

December 29, 1986—Respondent filed a special exception and general denial.

December 30, 1986—The County amended its petition to include another child, C.J. Slatton.

June 29, 1987—First trial commenced on a petition to terminate (without a jury).

September 29, 1987—The trial court entered an order denying termination.

December 15, 1987—The County filed a motion to prevent the return of the chil-

dren to the Slattons as permitted by supplemental orders.

December 18, 1987—The Slattons affirmatively pled the doctrine of *res judicata* in their answer to the County's motion.

December 19, 1987—L.M. Slatton was born.

January 5, 1988—The County filed first amended motion to modify, again seeking to prevent the return of the children to the Slattons.

February 5, 1988—The court entered temporary orders allowing only supervised visitation of the children at Brazoria County Protective Services Unit and placing L.M. Slatton in protective custody.

July 26, 1988—The County filed its first amended petition in which it sought to terminate the parent-child relationship. This petition included L.M. Slatton, a child born after the 1987 trial.

August 30, 1988—Second trial commences before a jury.

September 9, 1988—The court declares a mistrial due to the jury's inability to reach a verdict.

December 7, 1988—The County filed a second amended petition.

February 1, 1989—Third trial commences before a jury.

February 9, 1989—Third trial ends in verdict supporting the termination of the Slattons' parental rights.

February 16, 1989—Judgment of termination is entered.

■ The Slattons first contend that the doctrine of *res judicata* barred the State from pursuing this action.

The order denying termination stands in the same position as a final judgment, and therefore, is an appealable order. TEX.FAM. CODE ANN. § 11.19(b)(3) (Vernon 1986).

■ Pursuant to the doctrine of *res judicata*, a cause of action finally determined between the parties on the merits of

---

1. This proceeding was brought by the Brazoria County Child Protective Services, a unit of the Texas Department of Human Services. Although the Texas Department of Human Servic-

es appears to be the proper party to maintain this action, the judgment and appellate papers label the party proceeding with the action as the Brazoria County Child Protective Services Unit.

the case cannot be relitigated before the same or any other tribunal. The scope of *res judicata* is not limited to the matters actually litigated, but also includes causes of action or defenses arising from the same subject matter that might have been litigated in the first suit. *Segrest v. Segrest,* 649 S.W.2d 610 (Tex.1983); *Texas Water Rights Commission v. Crow Iron Works,* 582 S.W.2d 768 (Tex.1979). The traditional purpose of *res judicata* is to avoid continuous relitigation of the same subject matter. *Res judicata* is applicable to an attempt to relitigate issues previously tried in a termination case. To hold otherwise would be to allow the State with its vast resources to try the same issues over and over again to the disadvantage of the parents. Furthermore, if *res judicata* does not apply to the State in these proceedings, it would be unfair to apply it to the parents. If it did not apply to the parents, they could continue to relitigate the termination and this continued litigation would undercut the stability of the children's lives. We thus disagree with *Ex parte Gallop,* 486 S.W.2d 836, 839 (Tex.Civ.App.–Beaumont 1972, writ ref'd n.r.e.), and with cases from other jurisdictions cited by the County,[2] in which the courts held that *res judicata* was inapplicable in this type of case. The County, as well as the Beaumont court in the *Ex parte Gallop* case, also cites the case of *Pettit v. Engelking,* 260 S.W.2d 613 (Tex. Civ.App.–San Antonio 1953, writ ref'd n.r.e.) in support of this contention. A careful examination of this case reveals that it was reopened by the trial court within thirty days after the rendition of the judgment. The appellate court ruled that this had the effect of setting aside the judgment. Furthermore, the action in this case, as well as the other case cited by the State, *Hickman v. Smith,* 238 S.W.2d 838 (Tex.Civ.App.–Austin 1951, writ ref'd), was based on Articles 2336 and 2337 of the

Texas Civil Statutes, expressly authorizing the altering, amending or suspending of judgments in dependency proceedings. This statutory authority has long since been repealed.

■ When available, *res judicata* must be raised as an affirmative defense. Tex. R.Civ.P. 94. The Slattons filed a plea in bar on December 18, 1987, stating that "respondent would affirmatively plead and show that the current Motion of Movant is barred by the doctrine of res judicata." The motion referred to was a motion to modify supplemental orders, which dealt with conservatorship and visitation. The Slattons' pleading also contained a general denial and another general plea that the prior action was *res judicata* to this proceeding. If the County is correct that the Slattons' pleading could not be considered because the County had filed its first amended petition, then the County could have taken a default judgment because no later answers or responses were filed by the Slattons. The filing of an amended or supplemental pleading by one party will not negate an affirmative defense which has been raised by the other party's prior pleadings, and the pleading of the Slattons should be construed broadly to determine if *res judicata* was raised.

The prior denial of termination was not a complete bar to the subsequent action, but it was a bar to the admission of the Slattons' conduct which occurred prior to that order being used against them. The County could have introduced any evidence of matters occurring after that order.

■ The County's live pleading covered parental conduct both before and after the last judicial determination. The Slattons did not get a ruling from the trial court limiting the scope of the evidence to be admitted, nor did they object to the admis-

---

**2.** *See In re Carmaleta B.,* 21 Cal.3d 482, 146 Cal.Rptr. 623, 579 P.2d 514 (1978); *People in Interest of J.R.,* 711 P.2d 701 (Colo.Ct.App.1985); *In re Juvenile Appeal,* 190 Conn. 310, 460 A.2d 1277 (1983); *In the Interest of A.S.,* 12 Kan. App.2d 594, 752 P.2d 705 (1988); *Scott v. Prince George's County Dept. of Social Servs.,* 76 Md. App. 357, 545 A.2d 81 (1988), *cert. denied,* —

U.S. ——, 109 S.Ct. 3226, 106 L.Ed.2d 575 (1989); *In re Interest of V.B.,* 220 Neb. 369, 370 N.W.2d 119 (1985); *Matter of Ballard,* 311 N.C. 708, 319 S.E.2d 227 (1984); *In the Interest of M.R.,* 334 N.W.2d 848 (N.D.1983); *In re Newman,* 49 Or.App. 221, 619 P.2d 901 (1980); *Matter of J.L.H.,* 299 N.W.2d 812 (S.D.1980).

sion of such evidence. In fact, the Slattons, as well as the County, introduced evidence about matters and conditions prior to the 1987 order. The Slattons contend that their objection on the basis of *res judicata* was brought to the court's attention when the prior order was introduced. The order was introduced during the testimony of Lisa Jones, an employee of the Brazoria County Protective Services, when she was questioned about whether the June, 1987, trial included L.M. Slatton. The Slattons did not mention their *res judicata* objection at that time.

The Slattons also urged that their objections to the charge preserved error on their *res judicata* contention. The objection to the charge was as follows:

MR. DONNELL: Thank you, Your Honor. To save time on the rest of them, I don't know the exact special question number—special issue numbers; but we would request that a time frame post 6/29/87 be inserted into each question as to the acts or omissions of each parent so that we are allowed to at least raise the issue of collateral estoppel or res judicata on the appeal so that that issue can be identified.

THE COURT: That objection is overruled.

MR. DONNELL: So I make sure I preserve it, we are asking, for example, Question No. 1 to read substantially as follows: Do you find by clear and convincing evidence that after June 29, 1987, Kenneth Slatton, Sr., knowingly placed or knowingly allowed the child K.A. Slatton, to remain in conditions or surroundings which endangered the physical or emotional well-being of the child K.A. Slatton, and then that would be made as to each parent as to each child.

THE COURT: Understood. Overruled.

In the first place, an objection at this point in the trial did not preserve the Slattons' *res judicata* contention. It would be unfair to the jury to allow the County to go to trial on their pleadings encompassing the time period that would have been barred by *res judicata*, to present evidence of that time period, and then to instruct him that they will have to sort out which occurred when. To properly preserve the objection, the Slattons should have objected to the trial court allowing the County to go to trial and introduce evidence that covered matters and conditions prior to the 1987 order.

■ In the second place, the Slattons do not have a point of error on appeal that the trial court erred in failing to instruct the jury that it should consider only conduct and circumstances existing after the last adjudication. The Slattons in both points of error referring to the doctrine of *res judicata* contend that the third trial was barred because there was no subsequent material change in the circumstances of the Slattons or the Slatton children.

The present case did not involve a request for the modification of the managing conservator. A modification action requires that the circumstances of the child, managing conservator, possessory conservator, or other party affected by the order be shown to have materially and substantially changed since the entry of the order. Tex.Fam. Code Ann. § 14.08(c)(1)(A) (Vernon Supp.1991). This proceeding was for involuntary termination of parental rights, and such a termination requires the existence of one of the conditions in Tex.Fam. Code Ann. § 15.02 (Vernon Supp.1991). Special questions were submitted to the jury inquiring whether the Slattons had engaged in conduct or knowingly placed the children with persons who had engaged in conduct which endangered the physical or emotional well-being of the children and inquiring whether the Slattons had knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children. These issues did not refer to material or substantial changes. The Slattons' only complaint was to the trial court requesting that the jury questions be limited to the parental conduct occurring after the order denying termination, and they have not complained about the jury questions on appeal. In their points of error they do not challenge

the trial court's ruling as to the admission of evidence or the jury charge. They argue that *res judicata* is applicable because the evidence was insufficient to show a material change since the first trial.[3] As we discussed earlier, the movant is not required to show material change in a proceeding to terminate parental rights. The point of error is overruled.

In the second point of error, the Slattons contend that the action as it concerned L.M. Slatton was barred by the doctrine of *res judicata* and collateral estoppel because the facts, conditions, and circumstances supporting the termination occurred and were litigated prior to the birth of L.M. Slatton. *Res judicata* and collateral estoppel apply when the parties and issues are the same. *See Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816 (Tex. 1984). The doctrines may also apply to issues which could have been tried. L.M. Slatton had not been born at the time of the first trial and was not a party to that proceeding. Termination of the parental rights of the Slattons as to L.M. was not sought at that trial. Furthermore, the issue of the termination of the parental rights of the Slattons as to L.M. could not have been tried at that time. Section 15.-021 of the Texas Family Code permits the filing of a petition to terminate before the birth of a child, but no hearing on that termination may be held before the child is at least five days old. Tex.Fam. Code Ann. § 15.021 (Vernon Supp.1991). This point of error is overruled.

Slatton next contends in two points of error that there was insufficient evidence to support the jury's findings that either the Slattons knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being or that they knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children.

Termination of the parent/child relationship requires clear and convincing evidence that the parent has engaged in conduct prohibited by Section 15.02 and that such termination is in the best interest of the child.[4] This standard is statutorily as well as constitutionally mandated. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In the Interest of G.M.*, 596 S.W.2d 846 (Tex.1980); *Lakes v. Texas Dept. of Human Servs.*, 791 S.W.2d 214, 216 (Tex.App.–Texarkana 1990, writ denied). Clear and convincing evidence has been defined as the "measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations

---

3. In their first point of error, the Slattons contend the following: "Termination of the parental rights of Appellants to the children K.A. SLATTON, D.A. SLATTON, L.A. SLATTON, and C.J. SLATTON at the third trial was barred by the doctrine of res judicata as there was no subsequent material change in the circumstances of the Appellants and the children after termination was denied in the first trial and the facts and circumstances shown to have occurred after the first trial were insufficient as a matter of law standing alone."

In the second point of error, the Slattons contend the following: "Termination of the parental rights of Appellants to the child L.M. SLATTON at the third trial was barred by the doctrines of res judicata and/or collateral estopped (sic) as the facts, conditions, and circumstances supporting termination occurred and were litigated prior to the birth of L.M. SLATTON and there was no material changes in the circumstances of the parties after the first trial."

4. A non-exclusive list of the factors to be considered in assessing the best interest of a child are:
1. the desires of a child;
2. the emotional and physical needs of the child now and in the future;
3. the emotional and physical danger to the child now and in the future;
4. the parental abilities of the individuals seeking custody;
5. the programs available to assist these individuals to promote the best interest of the child;
6. the plans for the child by these individuals or by the agency seeking custody;
7. the stability of the home or proposed placement;
8. the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
9. any excuse for the acts or omissions of the parent.
*Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976).

sought to be established." *In the Interest of G.M.*, 596 S.W.2d at 847. In review, we must determine whether the trier of fact could reasonably conclude that the existence of the fact is highly probable. *Jones v. Dallas County Child Welfare Unit*, 761 S.W.2d 103, 105 (Tex App.–Dallas 1988, writ denied.)

The standard of review for factual sufficiency points of error in an involuntary termination proceeding is governed by the general rule applicable to other civil cases. In deciding factual sufficiency points, the court must consider all of the evidence. *Gonzalez v. Texas Department of Human Resources*, 581 S.W.2d 522 (Tex. Civ.App.–Corpus Christi 1979, writ ref'd n.r.e.), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980); *Sanchez v. Texas Department of Human Resources*, 581 S.W.2d 260 (Tex.Civ.App.–Corpus Christi 1979, no writ).

The evidence presented at the final trial was an accumulation of all the information, evidence and testimony collected by the State over the period of time between the State's initial visit to the Slattons' residence on December 2, 1983, and the date of the final trial.

Kenneth Slatton testified about the conditions of their various homes, reflected by numerous photographs, as being messy but adequate. He testified that their home situation had improved over the last five years due to numerous visits by various teachers who gave them instructions on how to keep a clean house and adequately care for their children. He also recounted instances when he had refused to allow the teachers to enter. In summary, Slatton stated that their difficulties were caused chiefly by the continuing persecution by the State.

Patsy Slatton testified that she agreed with Kenneth's testimony and that the parenting and house-care teachers had failed to explain things so that she could understand what they wanted. She also testified that she had been on antidepressants for a long period of time.

The last child, L.M., was born in December 1987. One week after her birth, a fire inspector, Mike Carpenter, inspected their home at 219 Bayou Drive in Danbury. He testified that the floor of the house was covered with various items, with a few paths through the clutter between rooms; that a space heater was close to flammable material; that part of the ceiling was torn open, exposing insulation to the elements; that the rotting bathroom floor contained a hole through which the ground was visible; that the toilet in the bathroom contained feces and a used sanitary napkin; and that there was a cat litter box which appeared to have been unchanged for several weeks. The bedrooms were very cluttered, with a space heater next to a curtain. The ceiling in the kitchen was rotting and falling down. There was a large pile of trash in front of the broken stove, and there were exposed bottles apparently containing chemicals under the sink. Access to the house was by a rotten staircase with no railings. Under the stairs was a pile of rotting lumber with nails sticking up. Under the bathroom was a pool of raw sewage, which stood in a small ditch going toward a bayou. There was also a large pile of garbage nearby. Based upon all of these conditions, Carpenter considered the house dangerous as a fire hazard, and he was concerned about possible rodent infestation.

Deputy Sheriff Jerry Anderson testified that on June 13, 1988, he found the house dirty, cluttered, and smelling of urine and that in his eighteen years of law enforcement, he had never seen a house in such a condition.

The court issued an order placing L.M. in protective custody in February of 1988. She was returned to her parents one month later. In June 1988, the County conducted another examination on the basis of additional referrals. Although the residence was different, the description of its condition is essentially the same as before. On July 25, L.M. was again placed in protective custody, and there was additional counseling. In September 1988, the Slattons were living at another residence where essentially the same conditions existed; there were roaches everywhere and piles of clothing and objects covered the floor.

L.A. had been returned to the Slattons on September 29, 1988. The caseworker visited him two weeks later. She testified that he was bruised, depressed, had dark circles under his eyes and refused to smile. She noted that the condition of the residence had deteriorated and that roaches crawled up her leg. On November 4, L.A. was again placed in protective custody.

The examining doctor testified that during the one month stay with the Slattons, L.A. had changed from being a happy, well-adjusted child with clear skin and good speech to a very sad and depressed child, with many bruises and poor hygiene. In the doctor's opinion, the change was due to physical abuse or neglect. The doctor next examined L.A. after he had spent a month at the foster home and testified "it was like the switch had been turned back on." A clinical psychologist who had evaluated the parents testified that he did not believe that the parents could meet the emotional and physical needs of the children and that the parents' inaction in caring for the children was damaging to the children.

Diana Hlavaty, the apartment manager for the Slattons' next residence, Northside Manor Apartments, testified that in mid-November of 1988, the Slattons moved into a clean, well-kept apartment that had just been cleaned. On January 18, 1989, she investigated a foul odor in the apartment to make sure there was no dead body and found the apartment to be in a very bad condition. She explained that there were roaches everywhere, that there were clothes all over the floor and the furniture, and that dishes, ashtrays, glasses and food were everywhere. She further stated that rotten food was producing an odor so bad that the refrigerator had to be removed.

Another psychologist, who had counseled the Slattons from April of 1986 until July of 1988, testified that he did not expect the Slattons to ever be willing to provide a minimally acceptable standard of living for the children. The supervisor of Brazoria County Protective Services testified that between 1983 and August of 1988, they had provided counseling, parenting classes, homemaker services and clothing for the children, and that the County had expended a total of approximately $140,000.00 in providing those services. There was also considerable evidence presented about the generally deplorable condition of the Slattons' living quarters and their continuing failure to adequately care for their children during this time period.

Through numerous witnesses, the jury heard evidence about the continuing deterioration in the home life of the Slattons in which the children's physical and emotional needs were severely neglected. We find that there was sufficient evidence of a clear and convincing nature to support the jury's findings providing the basis for terminating the parental rights of the Slattons. These points of error are overruled.

The judgment of the trial court is affirmed.