877 P.2d 161 (1994)
STATE of Utah, in the Interest of J.J.T. and T.J.T.
J.T., Appellant.
No. 920351-CA.
Court of Appeals of Utah.
June 10, 1994.
Robert L. Froerer, Ogden, for appellant.
Jan Graham and Carol L.C. Verdoia, Salt Lake City, for State.
Before ORME, Associate P.J., and BENCH and BILLINGS, JJ.
ORME, Associate Presiding Judge:
Appellant seeks reversal of the trial court's decision terminating his parental rights. He contends the court's action is barred by res judicata. We disagree and affirm the trial court's judgment.

*162 FACTS
J.T., the appellant, is the biological father of minors J.J.T. and T.J.T. Appellant resided with the mother of the two minors, as well as with her five other minor children from previous marriages. Pursuant to a missing persons investigation, on December 17, 1990, police discovered the body of appellant's six year-old stepson in a shallow grave in appellant's back yard. Appellant was subsequently charged with third degree felony abuse of a corpse and second degree felony homicide.
The circumstances surrounding the death of appellant's stepson prompted the State to file a neglect petition on January 3, 1991, seeking temporary custody of the minor children residing with appellant, including J.J.T. Appellant admitted the allegations of neglect, and J.J.T. was placed in the temporary custody and guardianship of the Division of Family Services ("DFS"). Although the neglect petition was decided February 12, 1991, three days before appellant was sentenced to a five-years-to-life sentence of imprisonment, investigations by DFS into appellant's conduct vis-a-vis the children continued until approximately February 19, 1991.
On March 8, 1991, J.J.T.'s mother gave birth to appellant's son, T.J.T. Two weeks later, the State filed a petition with the juvenile court alleging that T.J.T. was a dependent child, and also filed a separate petition to terminate appellant's parental rights to J.J.T. and T.J.T. The petition to terminate parental rights was premised on parental unfitness, incompetence, and abandonment of J.J.T. and T.J.T.
Appellant asserts that the petition to terminate parental rights is barred by the doctrine of res judicata, arguing that the State could have brought the petition to terminate parental rights when the earlier neglect petition was filed by the State, or at least before the earlier petition was decided.[1]

STANDARD OF REVIEW
Appellant does not challenge the sufficiency of evidence relied on by the juvenile court to terminate his parental rights, but argues only that the termination petition was barred by res judicata. Therefore, this appeal presents a question of law. Office of Recovery Servs. v. V.G.P., 845 P.2d 944, 946 (Utah App.1992). Accepting the trial court's factual findings, we review its conclusions of law for correctness, according them no particular deference. Id.

ANALYSIS
Although appellant's single contention on appeal may be simply stated, the issue is an important one meriting careful consideration. Accordingly, we begin with a brief review of the res judicata doctrine and its two prongs, claim preclusion and issue preclusion. However, before putting the facts of this case through traditional res judicata analysis, we pause to question the applicability of the doctrine to cases involving the termination of parental rights. Only then do we consider whether the termination of appellant's parental rights is barred under the claim preclusion doctrine.

A. RES JUDICATA GENERALLY
The doctrine of res judicata "is based on the premise that the proper administration of justice is best served by limiting parties to one fair trial of an issue or cause." Trimble Real Estate v. Monte Vista Ranch, Inc., 758 P.2d 451, 453 (Utah App.1988) (citation omitted). Consequently, the doctrine has evolved from common law jurisprudence to serve such public interests as "fostering reliance on prior adjudication," "preventing inconsistent decisions," "relieving parties of the cost and vexation of multiple lawsuits," and "conserving judicial resources." Office of Recovery Servs. v. V.G.P., 845 P.2d 944, 946 (Utah App.1992) (citing Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)).
*163 Res judicata has two related but distinct branches, both of which are intended to promote judicial economy and the convenience afforded by finality in legal controversies. Copper State Thrift & Loan v. Bruno, 735 P.2d 387, 389 (Utah App.1987). One branch, claim preclusion, or "pure" res judicata, bars, inter alia, the relitigation of claims which have been previously litigated between the same parties. Id. To invoke this branch of res judicata, three requirements must be satisfied:
First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.
Madsen v. Borthick, 769 P.2d 245, 247 (Utah 1988). The other branch, issue preclusion, traditionally known as collateral estoppel, prevents relitigation of issues that have been decided, though the causes of action or claims for relief are not the same. Penrod v. Nu Creation Creme, Inc., 669 P.2d 873, 875 (Utah 1983); Copper State, 735 P.2d at 389.
The parties agree that the case before us turns on application of the claim preclusion prong of the res judicata doctrine. Thus, res judicata would bar the State's petition to terminate appellant's parental rights in J.J.T. if the neglect petition presents the same claim, demand, or cause of action as the petition to terminate parental rights. The doctrine would bar not only claims for relief which were litigated to finality on their merits, but also those claims which could and should have been presented in the prior action, but were not. Accordingly, if res judicata applies in this case, we must consider not only whether the neglect proceeding has preclusive effect because of claims actually litigated, but also whether the State could and should have brought the termination petition contemporaneously with the neglect petition.

B. GENERAL APPLICABILITY OF RES JUDICATA TO PROCEEDINGS TERMINATING PARENTAL RIGHTS
A more fundamental question, however, is whether the judicial doctrine of res judicata has any application in proceedings involving the welfare of children. Mindful of the unique nature of child custody and related proceedings, we share the concerns expressed by the courts which have recognized that a hyper-technical application of res judicata is improper in adjudications where the welfare of children is at stake.[2] Considerations regarding a child's welfare are rarely, if ever, static. In fact, it is more likely that the child's environment is constantly evolving, thus justifying the court's continuing jurisdiction. See Scott v. Department of Social Servs., 76 Md.App. 357, 545 A.2d 81, 90 (1988) ("child welfare seems to be a particularly appealing subject for periodic redetermination because children can be quickly and irretrievably scarred by negative circumstances"), cert. denied, 492 U.S. 910, 109 S.Ct. 3226, 106 L.Ed.2d 575 (1989).
Consequently, appellant's assertion that a "new" act of impropriety must have occurred for the State to bring a termination petition on the heels of a neglect petition totally misses the point of the juvenile court's continuing jurisdiction over a child. See Utah Code Ann. § 78-3a-40 (1992). In one sense, *164 each day a child is left in an unsafe or unhealthy environment represents a "new" basis for judicial concern, and it is this continued threat to a child's welfare that merits the court's continuing jurisdiction and periodic review. The best interests of a child usually cannot be determined from a single incident, or even a series of incidents considered in isolation. Rather, to effectively determine the best interests of a child, a court must be free from the imposition of artificial constraints that serve merely to advance the cause of judicial economy. See In re V.B., 220 Neb. 369, 370 N.W.2d 119, 121 (1985).
To that end, we note that the function of res judicata is "to protect litigants from the burden of relitigating an identical issue with the same party or his privy and to promote judicial economy by preventing needless litigation." Smith v. Smith, 793 P.2d 407, 409 (Utah App.1990). However, determining whether the circumstances of child abuse or abandonment justify terminating parental rights is not the type of "needless litigation" contemplated by the doctrine of res judicata. See In re Pardee, 190 Mich.App. 243, 475 N.W.2d 870, 873-74 (1991). Moreover, nonapplication  or at least the flexible application  of res judicata in termination of parental rights proceedings does not leave the parents unprotected and subject to vexatious litigation. There are other protections in place that adequately safeguard the parents' rights without compromising the significant concern for a child's welfare. See In re J.R., 711 P.2d 701, 703 (Colo.App.1985).
For example, a custody decision resulting from a divorce decree, predicated on a particular set of facts, is res judicata and will not be disturbed unless the party seeking modification can demonstrate a material change of circumstances. See Utah Code Ann. § 30-3-10.4 (Supp.1993). See also Smith, 793 P.2d at 410. Likewise, evidentiary requirements in a parental rights termination proceeding afford protections of the same caliber as those offered through res judicata. See In re J.R., 711 P.2d at 703 (protections equivalent to those advanced by res judicata available in termination proceedings by requirement that state meet its evidentiary burden of proof). Thus, it cannot be persuasively argued that judicial economy or the convenience afforded by finality of legal controversies must override the concern for a child's welfare. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 402-03, 101 S.Ct. 2424, 2430, 69 L.Ed.2d 103 (1981) (Blackmun, J., concurring) (recognizing res judicata occasionally requires "equitable tempering" to meet public policy requirements).
Accordingly, it is with considerable trepidation that we set about in this case to employ routine res judicata analysis. We do so because the parties have asked us to do no more and because even strictly applying traditional res judicata analysis, uninfluenced by our expressed concerns, we readily conclude that the prior neglect determination is no bar to the termination petition at issue in this case. Thus, we save for another day the difficult question of whether, and to what extent, res judicata really applies in the context of termination of parental rights.

C. CLAIM PRECLUSION AND TERMINATION OF PARENTAL RIGHTS
Turning to the application of the claim preclusion branch of res judicata to this case, there is no dispute that the first and third requirements of the Madsen test have been satisfied. See Madsen v. Borthick, 769 P.2d 245, 247 (Utah 1988). The parties involved in both petitions are the same, and the neglect petition resulted in a judgment on the merits.[3] The question remains as to whether the second requirement of the Madsen test has been met, i.e., whether the claim presented in the State's termination petition and adjudicated in the ensuing proceeding was the same claim presented in the neglect proceeding and, even if it was not, whether it could and should have been asserted in that earlier proceeding.
Claim preclusion is not applicable if the later proceeding is based on a different claim, demand, or cause of action than was at *165 issue in the prior proceeding. Schaer v. Department of Transp., 657 P.2d 1337, 1340 (Utah 1983). Where the two causes of action rest on different facts, and evidence of a different kind or character is necessary to sustain them, the claims are not the same for purposes of res judicata. Id. See also Round Hill Gen. Improvement Dist. v. B-Neva, Inc., 96 Nev. 181, 606 P.2d 176, 178 (1980) (claims are not identical unless "the same evidence supports both the present and former cause of action").
Accordingly, even at a first glance, it appears that appellant cannot successfully argue that the petition to terminate parental rights in J.J.T. raises the same claim as presented in the neglect proceeding. The nature of the two proceedings, including evidentiary requirements, is completely different and, thus, it is difficult to see how the same claim, demand, or cause could possibly be presented in both proceedings.
A neglect petition is a means for the State, acting in the capacity of parens patriae, to obtain temporary custody of a child. See Utah Code Ann. §§ 78-3a-22, -23 (1992). In contrast, a petition to terminate parental rights is a permanent measure affecting not only custody, but all parental rights. See id. § 78-3a-48. See also In re J.P., 648 P.2d 1364, 1366 n. 1 (Utah 1982) (termination of parental rights eliminates all parental rights, including residual rights). Moreover, the statutory scheme specifically distinguishes between neglect proceedings and termination of parental rights proceedings.
For example, when a neglect petition seeking temporary custody of a child is granted, the order merely deprives the parent of custody[4] and does not terminate parental rights.[5]In re D.M., 790 P.2d 562, 568 (Utah App.1990). Additionally, the statute provides that "[a]t any time after a petition is filed, the court may make an order providing for temporary custody of the child." Utah Code Ann. § 78-3a-23 (1992) (emphasis added). The court may then "place the child in the legal custody[6] of a relative or other suitable person," or "vest legal custody of the child in the Division of Family Services ... or other public agency ... for placement in a foster family home or other facility." Id. § 78-3a-39(2), (3) (emphasis added). Even after deprivation of custody and placement of the child with the Division of Family Services or in a foster home, a parent still maintains residual parental rights and duties.[7]
Accordingly, a neglect proceeding affects only a parent's right to custody; the proceeding, by its nature, does not concern other parental rights and duties and cannot permanently sever parental rights. We now consider whether, despite this fact, the same claim can somehow be said to have been raised in both the neglect and termination proceedings in the instant case.

D. CONSIDERATION OF CLAIMS ACTUALLY PRESENTED
The juvenile court properly distinguished between the neglect proceeding and *166 the proceeding terminating appellant's parental rights. In so doing, the court held the prior proceeding was not res judicata as the parties did not litigate the same claim or demand in each proceeding. The court ruled correctly.
As previously discussed, a neglect proceeding provides an immediate, temporary remedy for a neglected, abused, or abandoned child. Consequently, the State initially alleged neglect merely for the purpose of obtaining temporary custody of J.J.T. in order to provide "care and protection" as contemplated by the statute.[8] Utah Code Ann. § 78-3a-1(3) (1992). The need for care and protection in this case arose with the discovery of the body of appellant's stepson on December 17, 1990, buried in appellant's backyard. As such, the court's review was directed only to the specific incident giving rise to the neglect petition.
In contrast, the State in the later proceeding sought to terminate all parental rights based on appellant's unfitness and incompetence as a parent and his alleged abandonment. Thus, the court was required to review the totality of circumstances. See In re A.S., 12 Kan.App.2d 594, 752 P.2d 705, 709 (1988) (proceedings to terminate parental rights generally arise out of continuous and cumulative conduct). The court, therefore, did not and could not consider only the December 17 incident as it had in the neglect proceeding.
Also, in the later proceeding, the State was required to satisfy a different standard than in the neglect proceeding. Compare Utah Code Ann. § 78-3a-1 (1992) (can remove neglected child if in child's best interest) with § 78-3a-48 (can terminate parental rights only where parent unfit, incompetent, or substantial continuous neglect shown). See also In re J.P., 648 P.2d 1364, 1378-79 (Utah 1982) (must show parent unfit or incompetent in order to terminate parental rights; child's best interest not sufficient). The record itself manifests the evidentiary difference between the neglect proceeding and the termination of parental rights proceeding. The court's "findings" on the neglect petition consisted of a single, brief paragraph noting that J.J.T. was a "neglected" child and directing his placement in the temporary custody of the Division of Family Services. In contrast, the order terminating appellant's parental rights is replete with details of the continued degradation and abuse the children suffered at appellant's sadistic whim. Those findings of fact, detailed in twelve pages of single-spaced type, contain evidence which "clearly demonstrated that [appellant] lack[s the] capacity to serve the purposes of parenthood." In re Castillo, 632 P.2d 855, 857 (Utah 1981).
Based on the foregoing, there were clearly two different claims involved in the two proceedings, and the cause of action in each proceeding was based on a different state of facts and evidence. Because the same claim or demand was not at issue in the two proceedings, the neglect proceeding was not a bar under the doctrine of res judicata to the subsequent petition to terminate appellant's parental rights, assuming only that the termination claim should not and could not have been raised in the neglect proceeding.

E. WHETHER CLAIM COULD AND SHOULD HAVE BEEN RAISED
Appellant posits that because claim preclusion prevents litigation of claims that could and should have been litigated in the prior action but were not, the petition to terminate appellant's parental rights should be barred. In other words, appellant argues that because he was incarcerated immediately after his stepson's body was discovered, there were no new acts of impropriety concerning his children that possibly could have occurred. Thus, appellant contends, the State necessarily litigated the neglect petition based on the exact same set of facts as was at issue in the termination proceeding. At oral argument, appellant also contended that the State had to have a new factual basis *167 to file its new petition. These statements ignore the policy considerations underlying res judicata and child custody proceedings.
While the exact same set of facts may actually have existed at the time both petitions were filed or adjudicated, the totality of facts was not known by the State at the time the neglect proceeding was concluded. The record indicates the DFS investigator did not complete his report until February 19, 1991. As previously noted, the neglect petition concerning J.J.T. was adjudicated seven days earlier. Thus, even if otherwise proper, the State could not have amended its neglect petition to seek termination of parental rights as the final order on the neglect petition had already been entered. When the State fully understood the gravity of appellant's conduct, the State properly filed its separate petition to terminate appellant's parental rights.[9]
Appellant implicitly assumes the evidence presented by the State in support of its neglect petition was sufficient to sustain a petition to terminate parental rights, or that the petition to terminate parental rights was based solely on appellant's neglect. Appellant asserts that because on January 25, 1991, he pleaded guilty to felony homicide in the death of his stepson, the State knew before the neglect proceeding was concluded both that appellant was not a fit parent and that there was a likelihood of appellant's long-term incarceration.[10]
Turning to these contentions, we note first that the Legislature has determined that neglect, without more, does not merit immediately terminating parental rights. See Utah Code Ann. § 78-3a-48(1) (1992). See also D.W. v. W.M., 856 P.2d 363, 366 (Utah App. 1993) (after finding neglect, child placed in temporary custody of DFS). Second, as this court has held that criminal conduct and the resulting incarceration, in and of themselves, are insufficient bases to terminate parental rights,[11]M.W.H. v. Aguilar, 794 P.2d 27, 29 (Utah App.1990), it certainly cannot follow that the mere likelihood of appellant's longterm incarceration would have been sufficient to terminate appellant's parental rights.
The State has often been cautioned to avoid acting overzealously in seeking to terminate parental rights, and the existing legal framework strongly countenances against prematurely seeking to permanently terminate parental rights. In this case, when the neglect petition was filed, the State knew only that appellant's stepson had been unlawfully buried in appellant's backyard. Certainly there was suspicion that appellant had done more than mishandle a corpse. And there may have been preliminary reports and speculation that appellant had been continuously abusing the children residing with him. But suspicion and speculation are not enough to justify terminating parental rights. If we were to accept appellant's position, we would necessarily encourage the State to seek termination more aggressively, undercutting the conventional view that termination should be sought only with great reluctance and as a last resort. Basically, to preserve the full range of options available to it, the State would be required, as a practical matter, to seek termination in any neglect petition lest *168 it risk its ability to later seek such relief because of res judicata.
The case of Smith v. Smith, 793 P.2d 407 (Utah App.1990), is instructive. Smith involved a motion by the noncustodial parent seeking to modify the child custody provision of a divorce decree. Id. at 408. The trial court granted the custodial parent's motion in limine, restricting introduction of evidence arising prior to an earlier court proceeding in which the noncustodial parent sought to enforce his visitation rights. Id. at 409. The trial court held that the evidence concerning whether there was a material change in circumstance warranting modification of custody had previously been litigated and was excludible under the doctrine of res judicata. Id.
On appeal, this court focused on "whether, because [the noncustodial parent] could have sought a change of custody in [the earlier proceeding] but did not, he is precluded from presenting evidence then extant at the later proceedings." Id. at 410. This court concluded that he was not precluded, because "[i]t would be too speculative to determine at what point Scott could have, or should have, asked for a change in custody." Id. As in Smith, it is too speculative to determine whether the State could have sustained its burden of proof in a termination of parental rights proceeding based on the evidence it had at the time the neglect petition was heard.
Accordingly, res judicata does not bar the termination petition. Appellant has not shown that the State could  and more importantly, should  have presented its petition to terminate parental rights prior to adjudication of the neglect petition. Moreover, claim preclusion does not require parties to advance any and all possible arguments at an initial proceeding. Rather,
[r]es judicata prohibits only a later cause of action based on matters which could have sustained the claim determined on the merits in the former judgment  not a cause of action which might have been determined only if an additional argument, not made in the previous case, had proved persuasive on the separate and distinct claim which formed the basis of the prior judgment.
In re Juvenile Appeal, 190 Conn. 310, 460 A.2d 1277, 1281 (1983). In sum, the State was not required to gamble in the earlier proceeding that appellant's admission of neglect, and the evidence then available, would be sufficient to sustain a termination decision.
If we accepted appellant's position, the State would be barred, on the ground of res judicata, from bringing a subsequent claim based on pre-existing facts discovered after litigating a neglect petition. Instead, the State would be required to wait until "new" acts of abuse were committed before filing a subsequent petition. This is contrary to the plain language of the statute, Utah Code Ann. § 78-3a-40 (1992), which vests the juvenile court with continuing jurisdiction in order for it to determine what is best for children at any given time. See also In re V.B., 220 Neb. 369, 370 N.W.2d 119, 121 (1985) (doctrine of res judicata cannot settle question of child's welfare for all time to come). Because the court has continuing jurisdiction, res judicata should not operate to bar the State from presenting a claim based on facts learned subsequent to an initial custody proceeding, even if those facts concern conduct occurring prior to the initial proceeding. In re A.S., 12 Kan.App.2d 594, 752 P.2d 705, 709 (1988). To hold otherwise would potentially subject children to continued abuse, while forcing the State to wait until a "new" act could be proven before it could proceed.

CONCLUSION
The best interests of a child transcend concerns about judicial economy. Policies protecting the welfare of children far outweigh any judicial economy or convenience that may be achieved by precluding the State's termination claim. Barring the State's termination petition would serve only to frustrate the best interests of J.J.T. and, in any event, the requirements of res judicata have not been met. Appellant has failed to demonstrate that the claim made in the termination of parental rights proceeding was presented, or could and should have been *169 presented, when the neglect petition was heard.
Accordingly, the judgment appealed from is affirmed.
BENCH, J., concurs.
BILLINGS, J., concurs in result only.
NOTES
[1] This court noted at oral argument that T.J.T. had not yet been born at the time the neglect petition concerning J.J.T. was adjudicated. Appellant conceded the petition to terminate parental rights in T.J.T. was not barred by res judicata as the State could not have brought a petition to terminate parental rights of an unborn child. Thus, our analysis of res judicata and its application applies only to appellant's parental rights in J.J.T.
[2] See, e.g., In re J.R., 711 P.2d 701, 703 (Colo. App.1985) (policy of limiting litigation should not be applied so as to disadvantage state in its role of parens patriae); In re Juvenile Appeal, 190 Conn. 310, 460 A.2d 1277, 1282 (1983) (doctrines of preclusion should be flexible and "must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies"); In re A.S., 12 Kan.App.2d 594, 752 P.2d 705, 711 (1988) (court must be free to examine all circumstances, evidence, prior facts and orders, and other relevant information in termination proceeding); In re Pardee, 190 Mich.App. 243, 475 N.W.2d 870, 874 (1991) (doctrine of res judicata "cannot settle the question of a child's welfare for all time"); In re V.B., 220 Neb. 369, 370 N.W.2d 119, 121 (1985) (same); In re Newman, 49 Or.App. 221, 619 P.2d 901, 905 (1980) (best interest of child is overriding consideration; thus all relevant facts are to be considered); In re J.L.H., 299 N.W.2d 812, 815 (S.D.1980) (lower court did not err by admitting evidence originating prior to earlier neglect proceeding). But see Slatton v. Protective Servs. Unit, 804 S.W.2d 550, 553 (Tex.App.1991).
[3] Although the juvenile court retains jurisdiction of a child whose custody was adjudicated in a neglect proceeding, see Utah Code Ann. § 78-3a-40 (1992), the findings and order entered pursuant to the neglect petition are final and appealable. See id. § 78-3a-51 (1992).
[4] "Deprivation of custody" means the "transfer of legal custody by the court from a parent or the parents or a previous legal custodian to another person, agency, or institution." Utah Code Ann. § 78-3a-2(10) (1992).

"Legal custody" is defined as a "relationship embodying the following rights and duties: (a) the right to physical custody of a child; (b) the right and duty to protect, train, and discipline him; (c) the duty to provide him with food, clothing, shelter, education, and ordinary medical care; (d) the right to determine where and with whom he shall live; and (e) the right, in an emergency, to authorize surgery or other extraordinary care." Id. § 78-3a-2(14).
[5] "Termination of parental rights" is defined as "the permanent elimination of all parental rights and duties, including residual parental rights and duties, by court order." Utah Code Ann. § 78-3a-2(21) (1992) (emphasis added).
[6] See note 4.
[7] Utah Code Ann. § 78-3a-2(18) (1992) defines "Residual parental rights and duties" as

those rights and duties remaining with the parent after legal custody or guardianship, or both, have been vested in another person or agency, including, but not limited to, the responsibility for support, the right to consent to adoption, the right to determine the child's religious affiliation, and the right to reasonable visitation unless restricted by the court. If no guardian has been appointed, "residual parental rights and duties" also include the right to consent to marriage, to enlistment, and to consent to major medical, surgical, or psychiatric treatment.
[8] While appellant asserted at oral argument that a neglect petition was not the only course of action the State could have taken to obtain immediate redress for a potentially abusive environment, the alternatives noted by appellant, namely a temporary restraining order or dependency petition, are likewise temporary measures affecting only custody of J.J.T. and not parental rights in J.J.T.
[9] Appellant implies that the State must first afford him an opportunity to reform, i.e., to undergo counseling for child abuse, prior to terminating his parental rights. This court has previously held the State is not bound, in instances of physical abuse of a child, to first provide the parent with treatment, rehabilitation, or other assistance to correct the situation before moving forward to terminate parental rights. Bingham v. McArthur, 808 P.2d 1122, 1126 (Utah App.1991); J.R.T. v. Timperly, 750 P.2d 1234, 1237 (Utah App.1988).
[10] Though appellant pleaded guilty January 25, 1991, he was not sentenced until February 15, 1991  after the neglect petition had been adjudicated on its merits. Appellant's conviction and sentence, which occurred after final adjudication of the neglect petition, are "new" facts of considerable relevance. While appellant's conviction alone may not have sustained terminating his parental rights, the conviction surely warrants the court's reconsideration of J.J.T.'s best interest and thus the filing of a subsequent petition. See Matter of Newman, 49 Or.App. 221, 619 P.2d 901, 905 (1980).
[11] This may no longer hold true under Utah Code Ann. § 78-3f-108(2)(e), (f) (Supp.1993), which specifically recognizes conviction of a felony and incarceration, depending upon the facts of the crime, as evidence of grounds for termination of parental rights.