2001 UT App 353

STATE of Utah, in the interest of S.D.C.,
a person under eighteen years of age.

P.D.C., Appellant,

v.

D.J.C.R., Appellee.

No. 20000633–CA.

Court of Appeals of Utah.

Nov. 23, 2001.

Cindy Barton–Coombs, Roosevelt, for Appellant.

Martha Pierce, Salt Lake City, and Cleve J. Hatch, Vernal, Guardians Ad Litem.

Before Judges GREENWOOD, BILLINGS, and DAVIS.

## OPINION

BILLINGS, Judge:

¶1 This is the second appeal by P.D.C. (Father) concerning the termination of his parental rights to S.D.C. (Child). In this appeal, Father argues the juvenile court erred in allowing the guardian ad litem (Guardian) to file a termination petition following our remand and the juvenile court's dismissal of a prior petition under the Indian Child Welfare Act (ICWA), 25 U.S.C.A. §§ 1901–1963 (West 2001). Father also argues the trial court erred in concluding that ICWA's active efforts requirement was met. We affirm.

## BACKGROUND

¶2 D.J.C.R. (Mother) and Father divorced in 1989, and Mother was granted custody of Child and Child's brothers,[1] subject to reasonable visitation by Father. Father and the children are enrolled members of the Eastern Shoshone Tribe.

¶3 In 1993, Mother and D.R.R. (Stepfather) petitioned to have the children adopted by Stepfather. Mother then filed a petition to terminate Father's parental rights. Following a trial on the termination petition, the juvenile court terminated Father's parental rights under Utah law and held that ICWA did not apply.

¶4 Father appealed the termination of his parental rights to this court. We affirmed the termination under Utah law, but held that ICWA applied. *See In re D.A.C.*, 933 P.2d 993, 1003 (Utah Ct.App.1997). We held the parties had stipulated that ICWA's active efforts requirement had been met, eliminating this issue from consideration. *See id.* at 1002. However, we remanded to the juvenile court for a determination of whether the evidence presented at trial established beyond a reasonable doubt that Father's visitation would likely cause the children serious emotional or physical damage, as required to terminate Father's parental rights under

---

1. Child's brothers have reached the age of majority and are not parties to this proceeding.

ICWA. *See id.* at 1003. On remand, in December 1997, the juvenile court ruled the evidence was insufficient to establish beyond a reasonable doubt that continued visitation by Father was likely to result in serious emotional or physical damage to the children, and accordingly dismissed the termination petition.

¶ 5 In October of 1999, two years after the dismissal of Mother's termination petition, Father filed an order to show cause to enforce his visitation rights in district court. Mother responded by filing for a protective order against Father, which was granted by the district court. On November 5, 1999, Guardian, who had been appointed to represent Child during the first termination proceeding, filed a motion to intervene in the visitation enforcement proceeding. That same day, Guardian filed a petition to terminate Father's parental rights in juvenile court.

¶ 6 On December 14, 1999, the district court granted Guardian's motion to intervene in the visitation enforcement proceeding and certified the matter to the juvenile court to be heard with the termination petition. The Eastern Shoshone Tribe was notified of the second termination petition, but declined to intervene.

¶ 7 At trial on the second termination petition, the juvenile court required Guardian to show a change in circumstances since the first termination proceeding that warranted termination of Father's parental rights under ICWA. Following the trial, the juvenile court concluded the evidence was sufficient to warrant termination of Father's parental rights under ICWA. In sum, the juvenile court found that at the time of the first termination proceeding, there was some prospect that Child's feelings towards Father would "mellow." However, at the time of the second termination proceeding, Child was more intimidated by Father, suffered from post-traumatic stress disorder, and adamantly desired that Father's parental rights be terminated. The court also found that such intim-

idation was warranted given Father's "frightening" courtroom demeanor and history of violent behavior. The court further found that Father had failed to rehabilitate despite his lengthy time in prison and was still incarcerated after violating parole. The court concluded that Child would likely suffer serious emotional or physical damage if she were required to visit Father and therefore terminated Father's parental rights. Father appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 First, Father argues the juvenile court erred in concluding that Guardian had authority to file the termination petition. We review questions of statutory interpretation for correctness. *See In re M.C.,* 940 P.2d 1229, 1233 (Utah Ct.App.1997). Second, Father argues res judicata barred the second termination petition. "The application of res judicata is a question of law, reviewed for correctness with no deference given to the [juvenile] court." *In re H.J.,* 1999 UT App 238, ¶ 15, 986 P.2d 115. Finally, Father argues ICWA's active efforts requirement was not met in either termination proceeding. As to the first termination proceeding, we will not overrule another panel unless a decision "is clearly erroneous or conditions have changed so as to render the prior decision inapplicable." *State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994) (quotations and citation omitted). As to the second termination proceeding, when a party fails to challenge and marshal the evidence underlying ultimate findings, we assume the juvenile court's judgment was correct. *See Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.,* 909 P.2d 225, 236 (Utah 1995).[2]

## ANALYSIS

### I. Guardian's Authority to File Termination Petition

¶ 9 Father argues the juvenile court erred in concluding Guardian had the authority to

---

**2.** For a termination petition to succeed, state law requirements must be met in addition to ICWA requirements. *See In re S.A.E.,* 912 P.2d 1002, 1004 (Utah Ct.App.1996). The parties have agreed that Father's parental rights can be terminated under Utah law; therefore the only remaining issue is whether Father's rights can be terminated under ICWA.

file the petition to terminate his parental rights. Guardian responds that as an appointed guardian ad litem, he had authority as an interested party to file the second termination petition.

■ ¶ 10 We agree with Guardian. As an appointed representative of Child, Guardian was an interested party with authority to file the second termination petition under Utah Code Ann. § 78–3a–404(1)(a) (Supp.2001). This section provides that "[a]ny interested party ... may file a petition for termination of the parent-child relationship." *Id.*

¶ 11 Furthermore, Utah Code Ann. § 78–3a–912(1) (1996 & Supp.2001) allows a juvenile court to appoint a guardian ad litem to "represent the best interest of a minor involved in any case before the court." Once appointed, the statute requires the guardian to perform the broad task of "represent[ing] the best interest of the minor in all proceedings." *Id.* § 78–3a–912(3)(a). Additionally, "[t]he attorney guardian ad litem shall continue to represent the best interest of the minor until released from his [or her] duties by the court." *Id.* § 78–3a–912(5). We conclude Guardian was properly appointed to represent Child's interests and had the statutory authority to file the termination petition in the present case.[3]

## II. Res Judicata

■ ¶ 12 Father argues the second termination petition was barred by res judicata. Res judicata has two distinct branches. The first branch, claim preclusion, "bars the relitigation of claims that have been previously litigated between the same parties." *In re T.J.*, 945 P.2d 158, 162 (Utah Ct.App.1997). The second branch, issue preclusion, " 'prevents relitigation of issues that have been decided, though the causes of action or claims for relief are not the same.' " *Id.* (quoting *In re J.J.T.*, 877 P.2d 161, 163 (Utah Ct.App.1994)). Although distinct, both branches are intended " 'to protect litigants from the burden of relitigating an identical issue with the same party or his [or her] privy and to promote judicial economy by

preventing needless litigation.' " *J.J.T.*, 877 P.2d at 164 (quoting *Smith v. Smith*, 793 P.2d 407, 409 (Utah Ct.App.1990)).

■ ¶ 13 Claim preclusion requires satisfaction of three elements:

"First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits."

*T.J.*, 945 P.2d at 162 (quoting *J.J.T.*, 877 P.2d at 163) (quotations and citation omitted). Claim preclusion will bar a subsequent cause of action if "the cause of action in the [subsequent] suit [is] identical to the one brought in the prior suit." *Macris & Assocs. v. Neways, Inc.*, 2000 UT 93, ¶ 28, 16 P.3d 1214.

■ ¶ 14 Father asserts claim preclusion barred the second termination petition because the same result was requested and no new facts were alleged in support of the petition. We disagree and conclude the second petition was a different cause of action based on new operative facts.

¶ 15 We have held that "[w]here the two causes of action rest on different facts, and evidence of a different kind or character is necessary to sustain them, the claims are not the same for purposes of res judicata." *J.J.T.*, 877 P.2d at 165 (citing *Schaer v. Department of Transp.*, 657 P.2d 1337, 1340 (Utah 1983)); *see also Collins v. Sandy City Bd. of Adjustment*, 2000 UT App 371,¶ 16, 16 P.3d 1251 (noting "general rule that a subsequent change in the operative facts ... has generally relieved a party from the application of res judicata") *cert. granted*, 29 P.3d 1 (Utah 2001); *T.J.*, 945 P.2d at 164–65 (Wilkins, J., concurring) (concluding that although res judicata applies in termination proceedings, res judicata would not bar second termination petition filed after appreciable passage of time because claim could not have been presented in first suit and issues are not identical due to passage of time).

---

**3.** Father also only generally asserts, without legal analysis or authority, that Guardian's actions violated due process. We therefore decline to consider this assertion. *See Smith v. Smith*, 1999 UT App 370, ¶ 8, 995 P.2d 14, *cert. denied*, 4 P.3d 1289 (Utah 2000).

Furthermore, in prior termination proceedings we have emphasized "that a hyper-technical application of res judicata is improper" because "[c]onsiderations regarding a child's welfare are rarely, if ever, static." *J.J.T.*, 877 P.2d at 163.

¶ 16 Following our remand in the first termination proceeding, the juvenile court summarily ruled that Father's parental rights could not be terminated because the evidence in the first termination trial did not establish beyond a reasonable doubt that Child would likely suffer serious emotional or physical damage by continued visitation with Father.[4] In the second termination proceeding, the juvenile court focused on whether the circumstances had changed such that termination of Father's parental rights was warranted under ICWA at the time of the second petition. The court specifically found new facts, unchallenged by Father. In sum, the court found that although at the time of the first termination proceeding "there was some prospect" that Child's feelings would "mellow," now that she is "of the age ... under Utah law to ... voice her opinion," she is adamant that his parental rights be terminated and it is unlikely her attitude will change. The court further found that although there was some prospect that Father would "become less intimidating," Child continues to suffer from post-traumatic stress and is "fearful to the point that she is hyper vigilant [sic]." The court also found that Father has a history of violent behavior and his "frightening" courtroom demeanor was

"very troubling [even for] adults," and "certainly would cause consternation, fear, and emotional trauma" for Child. Child's brothers, now of majority age, do not wish to visit Father, and Child's visits would now therefore be without them. The court additionally found that Father has violated parole twice since the first termination proceeding and has failed to rehabilitate "despite the lengthy time he has spent in prison," demonstrating "the prospect for improvement ... is remote."

¶ 17 Furthermore, contrary to Father's assertion, the record establishes the parties did not relitigate the facts underlying the juvenile court's conclusions in the first termination proceeding. Rather, in the second termination proceeding, the juvenile court properly considered the findings from the first termination proceeding, specifically noting that it was bound by those findings, in order to determine whether the parties' circumstances had changed such that termination of Father's parental rights was appropriate under ICWA at the time of the second petition.[5] *See In re J.R.*, 711 P.2d 701, 703 (Colo.Ct.App.1985) (concluding res judicata did not bar court from considering evidence from first termination proceeding because sufficient additional evidence justified court's conclusion that termination was warranted following second termination proceeding). We accordingly conclude the second termination petition was not barred by res judicata.[6]

---

4. In relevant part, ICWA provides, "No termination of parental rights may be ordered ... in the absence of a determination, supported by evidence beyond a reasonable doubt, ... that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C.A. § 1912(f) (West 2001).

5. Father argues the juvenile court should have required Guardian to establish a "significant change in circumstances" similar to the threshold requirement of a substantial change in circumstances required in modification of child custody awards under divorce decrees. Father's brief does not contain any citation to the record, in accordance with Rule 24(a)(5)(A) of the Utah Rules of Appellate Procedure, that shows this argument was preserved for appeal. In our review of the record we were unable to find any specific objection to the lack of such evidentiary

threshold. We therefore decline to consider this argument. *See In re E.R.*, 2001 UT App 66, ¶ 9, 21 P.3d 680.

6. Father also argues issue preclusion barred Guardian from relitigating whether allowing Father to maintain his parental rights is likely to result in serious emotional or physical damage to Child. Father's argument essentially is a restatement of his claim preclusion argument. Based on our claim preclusion analysis above, this argument fails. Whether Child would likely suffer serious emotional or physical damage if Father were allowed to maintain his parental rights at the time of the second termination proceeding is not the same issue as whether Child was likely to suffer serious emotional or physical damage at the time of the first termination proceeding. Therefore, we conclude issue preclusion did not bar the second termination proceeding.

### III. Active Efforts under ICWA

¶ 18 Father argues ICWA's active efforts requirement was not met in either the first or second termination proceeding. ICWA requires that "[a]ny party seeking ... termination of parental rights to[ ] an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C.A. § 1912(d) (West 2001).

#### A. First Termination Proceeding

¶ 19 Father argues the parties did not stipulate that active efforts were unsuccessful in the first proceeding. In the first termination proceeding, we explained that the trial court had found the parties stipulated that active efforts were unsuccessful, and therefore we concluded that "[t]his record acknowledgment of the stipulation eliminates this issue." *In re D.A.C.*, 933 P.2d 993, 1002 (Utah Ct.App.1997). If this conclusion was in error, Father's remedy was to file a petition for rehearing. *See* Utah R.App. P. 35(a). Because Father did not file for a petition for rehearing, this court is bound by the court's previous holding under the doctrine of horizontal stare decisis. *See State v. Menzies*, 889 P.2d 393, 399 n. 3 (Utah 1994) ("Horizontal stare decisis ... requires that a court of appeals follow its own prior decisions. This doctrine applies with equal force to courts comprised of multiple panels, requiring each panel to observe the prior decisions of another.").

#### B. Second Termination Proceeding

¶ 20 In the second proceeding, the trial court specifically found that the active efforts prong of ICWA was satisfied: "The Court finds that Utah Department of Corrections has made extensive efforts to remediate [Father's] behavior to no avail. The fact that [Father's] parole has been revoked numerous times is indication that [he] has resisted any efforts made to remediate his conduct." Father does not challenge this finding or argue that the evidence supporting the conclusion is insufficient. Accordingly, we decline to overturn the trial court's conclusion that this requirement of ICWA was satisfied. *See Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.*, 909 P.2d 225, 236 (Utah 1995) (assuming correctness of trial court ruling when party "[did] not challenge the factual predicates of the district court's ultimate legal conclusion or the sufficiency of those findings").[7]

### CONCLUSION

¶ 21 We conclude Guardian, as an interested party, had the authority to file the second termination petition and the petition was not barred by res judicata. We also conclude the active efforts requirement of ICWA was satisfied. We accordingly affirm the juvenile court's termination of Father's parental rights.

¶ 22 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and JAMES Z. DAVIS, Judge.

---

7. Father also argues the juvenile court was hostile to ICWA and Father's rights as an American Indian. After considering Father's argument we conclude it is without merit. *See State v. Mathews*, 13 Utah 2d 391, 375 P.2d 392, 394 (Utah 1962) (rejecting claim of bias and concluding trial court acted within "considerable latitude permitted in dealing with counsel to expedite trial"); *see also State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (stating it is an "established principle generally applicable to all civil and criminal cases ... that this Court need not analyze and address in writing each and every argument, issue, or claim raised").