2007 UT App 1

**STATE of Utah, in the interest of V.H., E.R., and P.R., persons under eighteen years of age.**

**E.R., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20060146–CA.**

Court of Appeals of Utah.

Jan. 5, 2007.

---

Steven R. Lawrence Jr., Lawrence Lawrence & Velez, LLC, and Jared S. Lawrence, Lexington Law Firm, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., Carol L.C. Verdoia, and John M. Peterson, Asst. Attys. Gen., Salt Lake City, for Appellee.

Martha Pierce and Suchada P. Bazzelle, Salt Lake City, Guardians Ad Litem.

Before GREENWOOD, Associate P.J., BILLINGS and ORME, JJ.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 E.R. (Father) appeals the decision of the juvenile court terminating his parental rights, arguing that he received ineffective assistance of counsel prior to the termination trial, that reunification services were insufficient under the Indian Child Welfare Act, and that the juvenile court was divested of jurisdiction when the statutory eighteen-month term for termination of parental rights expired. We affirm.

## BACKGROUND

¶ 2 Father is the biological father of three children: V.H., E.R., and P.R. On March 31, 2004, the Division of Child and Family Services (DCFS) obtained protective custody of Father's children after receiving a referral that E.R. had been struck by his parents. At the time of the termination of parental rights trial in November 2005, V.H. was ten, E.R. was eight, and P.R. was five. The biological mother of V.H. and E.R. is V.L.H.[1] V.H. and E.R. are Indian and are therefore within the jurisdiction of the Indian Child Welfare Act (ICWA). *See* 25 U.S.C. §§ 1901–1963 (2000). V.M.G. (Stepmother) is the biological mother of P.R. and the stepmother of V.H. and E.R. At the time of the termination trial, Father and Stepmother were married, but separated.

¶ 3 After determining that Father and Stepmother did not qualify for appointed counsel, the juvenile court continued the shelter hearing to allow them time to hire their own counsel. The juvenile court judge advised Father and Stepmother that it would be in their best interests to have separate counsel. Nonetheless, at the continued shelter hearing, Father and Stepmother were represented by the same counsel. The court found that removal of the children was in their best interests and granted temporary custody to DCFS. Subsequently, counsel represented both Father and Stepmother. After the adjudication hearing, the court found, by clear and convincing evidence, that Father and Stepmother had abused the children. A service plan approved by the juvenile court was signed by both parents.

¶ 4 Between May 2004 and March 2005, many hearings took place, and it was indisputable that Father and Stepmother had made little progress in meeting the requirements of the service plan. In counseling sessions, Father and Stepmother indicated that they still did not understand that they could not hit their children. They also did not acknowledge that they had abused their children, except for admitting to abusing the children on the one occasion that had been reported. In their counseling sessions, the children continued to indicate that they were afraid to return home.

¶ 5 At the permanency hearing, the juvenile court terminated reunification services and determined that the best permanency goal was adoption. The court also allowed counsel for Father and Stepmother to withdraw. The court advised Father and Stepmother to apply for appointed counsel or to find other counsel before the pretrial hearing. Thereafter, other counsel was appointed to represent Stepmother, and present counsel appeared for Father. Father filed a motion for relief from the court's permanency order under rule 48(a) of the Utah Rules of Juvenile Procedure and rule 60(b)(6) of the Utah Rules of Civil Procedure. The court denied Father's motion except for his ineffective assistance of counsel claim, which the court deferred for trial.

¶ 6 Trial on the State's petition for the termination of parental rights began on November 28, 2005, and continued over six days, concluding on January 3, 2006. At the beginning of the proceedings Father moved to

---

1. V.L.H. is not a party to the appeal. The juvenile court terminated V.L.H.'s parental rights for abandoning V.H. and E.R. *See* Utah Code Ann. § 78–3a–407 (1)(a) (Supp.2006).

dismiss the petition, arguing that the juvenile court lacked jurisdiction because the statutory time line had been exceeded. The court denied the motion and the trial continued. The court terminated Stepmother and Father's parental rights in V.H., E.R., and P.R. and determined that Father was not denied effective assistance of counsel. The court concluded that grounds existed for terminating parental rights: abuse; unfitness and incompetence; unwillingness to remedy the circumstances that led to the children's removal; and failure to make adjustments to safely care for the children. *See* Utah Code Ann. § 78–3a–407(1)(b)–(e) (Supp.2006). In addition, the court found that pursuant to ICWA, beyond a reasonable doubt, V.H. and E.R. could not be returned to either parent and that doing so "would likely result in serious emotional or physical damages to these Indian children."

¶ 7 Father now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Father argues that his initial counsel rendered ineffective assistance because he instructed Father to deny a pattern of abuse and failed to obtain a conflict of interest waiver from Father. Because Father first raised his ineffective assistance of counsel claim in a post-judgment motion under rule 60(b)(6) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 60(b)(6), which the juvenile court denied at the termination trial, we review for abuse of discretion. *See In re A.G.*, 2001 UT App 87, ¶ 9, 27 P.3d 562.

¶ 9 Father also argues that DCFS's reunification services failed to satisfy ICWA requirements. We "review[ ] the juvenile court's factual findings for clear error and its conclusions of law for correctness, affording the court some discretion in applying the law to the facts." *In re A.C.*, 2004 UT App 255, ¶ 9, 97 P.3d 706 (quotations and citations omitted).

¶ 10 Finally, Father asserts that the juvenile court was divested of jurisdiction to terminate Father's parental rights because the termination trial occurred more than eighteen months after removal of the children. "We review questions of statutory in-terpretation for correctness giving no deference to the [juvenile] court's interpretation." *In re S.C.*, 1999 UT App 251, ¶ 8, 987 P.2d 611 (quotations and citations omitted).

## ANALYSIS

### I. Ineffective Assistance of Counsel

¶ 11 Father argues that he was denied effective assistance of counsel because counsel (1) failed to obtain from Father a waiver of the conflict of interest that resulted from prior counsel's joint representation of Father and Stepmother; and (2) represented both Father and Stepmother despite their adverse interests, and as a result, provided detrimental advice to Father.

¶ 12 Utah Code section 78–3a–913(1)(a) entitles a parent to "the right to be represented by counsel at every stage of the [termination] proceeding." Utah Code Ann. § 78–3a–913(1)(a) (Supp.2006). " 'Although this section does not expressly state that counsel must be effective, the statute would be meaningless or illusory if it guaranteed only ineffective assistance of counsel. The legislature's omission of "effective" should not be read to suggest an intent to provide only ineffective assistance of counsel.' " *In re M.M.*, 2003 UT 54, ¶ 7, 82 P.3d 1104 (quoting *In re E.H.*, 880 P.2d 11, 13 (Utah Ct.App. 1994)). To succeed in his ineffective assistance of counsel claim, Defendant "must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the case." *In re E.H.*, 880 P.2d at 13. To demonstrate that he was prejudiced, Father must show "a reasonable probability that absent the deficient conduct, [he] would have obtained a more favorable outcome at trial." *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996). We conclude that the juvenile court did not abuse its discretion in determining that Father received effective assistance of counsel.

¶ 13 We consider first Father's argument that he was denied effective assistance of counsel because his counsel did not obtain Father's informed consent to waive the alleged conflict of interest as required by the Utah Rules of Professional Conduct. *See* Utah R. Prof'l Conduct 1.7(b)(4). Courts

may refer to the Utah Rules of Professional Conduct "to augment legal principles involving lawyer conduct." *State v. Johnson,* 823 P.2d 484, 489 (Utah Ct.App.1991). Nonetheless, "[v]iolation of a rule should not itself . . . create any presumption . . . that a legal duty has been breached. . . . The [r]ules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." Utah R. Prof'l Conduct, Scope. Therefore, while Father's original counsel may well have violated rule 1.7(b), that does not automatically constitute ineffective assistance of counsel. Father must still demonstrate prejudice. As the State points out, Father does not adequately establish an actual conflict of interest or that he did not waive any conflict. There was evidence that Father knew he had a better chance of reunification with the children if his wife was not residing with him, but he chose to remain with her. Thus, it appears that Father made the decision to present a joint defense with Stepmother.

■ ¶ 14 Father next contends that counsel's strategy to have Father and Stepmother deny abusing their children was aligned with Stepmother's case and thereby jeopardized his own. Father maintains that it was Stepmother who inflicted most of the physical abuse and that if he had been separately represented he would have had the opportunity to admit to prior neglect and demonstrate his ability to protect the children from Stepmother's abuse. Again, Father fails to carry his burden of demonstrating prejudice. If Father's counsel had separately represented Father and presented the defense Father suggests, we cannot say there is a reasonable probability that the outcome of the termination trial would have been in his favor. Although the juvenile court considered Father and Stepmother's refusal to admit to the abuse, its decision to terminate Father's parental rights included other findings, such as the severity of the abuse and the fact that Father had inflicted physical harm and failed to protect the children from abuse by Stepmother. Furthermore, it is significant that the juvenile court doubted Father and Step-

mother would remain separated and concluded that "both parties are guilty of abusing the children, and it is not safe to return the children to either parent whether they are separated or not." Because Father fails to show that his counsel's performance prejudiced his case, we need not determine whether counsel's performance was deficient. *See In re E.H.,* 880 P.2d at 13.

## II. Reunification Services Under ICWA

■ ¶ 15 Next, Father argues that DCFS failed to make "active efforts" in providing remedial services and rehabilitative programs under ICWA.[2] 25 U.S.C. § 1912(d) (2000) ("Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.").

¶ 16 The juvenile court found that Father had attended various programs pursuant to the service plan and that those services could have resulted in Father "learn[ing] the proper techniques to safely care for [his] children. . . . The services were available." The court further found that

> strict attendance at the programs required by the service plan is not enough. It is mandatory that [Father] learn from those programs and that [he] is able to demonstrate that [he] ha[s] learned to change [his] life and that [he] is no longer a threat to the safety and well being of [his] children. Both under ICWA and Utah [l]aw, there must be a showing that [Father] ha[s] made a change in [his] li[fe] and that the conditions that brought the children into [the] State's custody have been rectified. In this case[, Father] ha[s] been either unwilling or unable to change those conditions and [he] remains a threat to the safety of these children.

Father has failed to properly challenge these findings by first marshaling the evidence supporting them. *See In re S.D.C.,* 2001 UT App 353, ¶ 8, 36 P.3d 540 (stating that appel-

---

2. Utah law requires "reasonable efforts." Utah Code Ann. § 78–3a–407(3)(a). Father does not argue how or if this standard is different from that under ICWA.

late court assumes the juvenile court's judgment was correct when a party has failed to challenge and marshal the evidence underlying ultimate findings). Accordingly, we do not disturb the juvenile court's findings from which its determination that there was compliance with ICWA readily follows.

### III. Jurisdiction of the Juvenile Court

¶ 17 Finally, Father contends that, according to the plain language of Utah Code section 78–3a–312(8)(c), the juvenile court was divested of jurisdiction after the mandatory eighteen-month time frame expired. *See* Utah Code Ann. § 78–3a–312(8)(c) (Supp. 2006) ("A decision on a petition for termination of parental rights shall be made within 18 months from the day on which the minor is removed from the minor's home."). We agree that section 78–3a–312(8)(c) is mandatory, yet because it is not jurisdictional, the juvenile court did not lose its jurisdiction when the proceedings in this case were extended beyond the deadline.[3]

¶ 18 In *In re S.A.*, 2001 UT App 308, 37 P.3d 1172, this court held that Utah Code section 78–3a–308(2), which requires an adjudication hearing to be held no later than sixty days from either the shelter hearing or the filing of the petition, is mandatory but not jurisdictional, and that the juvenile court had jurisdiction to hold the adjudication hearing after sixty days. *See id.* at ¶ 37; *see also* Utah Code Ann. § 78–3a–308(2) (Supp. 2006). *In re S.A.* is controlling; thus, failure

to conclude the termination proceeding within eighteen months did not divest the juvenile court of jurisdiction. As this court noted in *In re S.A.*, although the statutory time limits are important, "the purpose of the statute is to expedite juvenile court proceedings in favor of children who are in need of prompt placement in an appropriate environment." *Id.* at ¶ 37 n. 10. Loss of jurisdiction because of a delay in proceedings would be entirely inconsistent with that purpose.

### CONCLUSION

¶ 19 The juvenile court did not abuse its discretion in finding that Father received effective assistance of counsel. We also determine that DCSF provided sufficient active efforts toward reunification under ICWA. Finally, the juvenile court was not divested of jurisdiction when the case extended past the statutory time frame. Accordingly, we affirm.

¶ 20 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.

---

**3.** The juvenile court acknowledged that this was an extraordinary case in that the State's petition for the termination of parental rights continued beyond eighteen months. The court explained that the delay was caused by (1) the parents' own request for an extension, (2) the withdrawal of counsel, and (3) the court's calendar.